F. LEONA BAXTER v. WILLIAM E. POE, INDIVIDUALLY AND AS CHAIRMAN OF THE CHARLOTTE-MECKLENBURG BOARD OF EDUCATION, THOMAS B. HARRIS, PHILLIP O. BERRY, C. D. SPANGLER, JR., MARILYN HUFF, JOHN B. McLAUGHLIN, INDIVIDUALLY AND AS MEMBERS OF THE CHARLOTTE-MECKLENBURG BOARD OF EDUCATION, THE CHARLOTTE-MECKLENBURG BOARD OF EDUCATION, A PUBLIC BODY CORPORATE, DR. ROLLAND W. JONES, SUPERINTENDENT OF SCHOOLS FOR CHARLOTTE-MECKLENBURG, JOHN J. DOYLE, JR., AND KATHLEEN R. CROSBY

No. 7826SC204

(Filed 31 July 1979)

1. Schools § 13.2— dismissal of teacher—no denial of due process

A school teacher who was dismissed for inadequate performance, insubordination, neglect of duty, and failure to comply with requirements of the board of education was not denied due process where (1) the board of education scrupulously followed the elaborate dismissal procedures mandated by G.S. 115-142; (2) the board admitted and gave probative effect to evidence "of a kind commonly relied on by reasonably prudent men in the conduct of serious affairs"; (3) the board properly heard hearsay evidence in order to complete its investigation; (4) the board heard but did not base its decision on evidence of events occurring more than three years before the superintendent's letter

Baxter v. Poe

recommending the teacher's dismissal; and (5) a board member's knowledge of the situation involving the teacher prior to the hearing did not indicate a lack of impartiality on the part of the board member.

2. Schools § 13.2— teacher's dismissal—corporal punishment—insubordination— substantial evidence

The trial court properly concluded the board of education's finding of insubordination by a teacher was based on substantial evidence where the evidence, including testimony by the teacher herself, the principal, classroom aides and a student's mother, tended to show that the teacher repeatedly used corporal punishment on her handicapped students in violation of her principal's orders, and a finding that the evidence of any one of the grounds listed under G.S. 115-142(e)(1) was substantial justified dismissal where the teacher was notified that dismissal was based on that ground.

APPEAL by petitioner from *Griffin, Judge*. Order dated 27 September 1977 entered in Superior Court, MECKLENBURG County. Heard in the Court of Appeals 6 December 1978.

F. Leona Baxter (hereinafter "petitioner") was employed during the 1973-74 school year by the Charlotte-Mecklenburg Board of Education (hereinafter "the Board") as a teacher of orthopedically handicapped children in the Ortho II class of the Billingsville Elementary School. She had attained status as a career teacher as defined by G.S. 115-142(a)(3). The Ortho II class contained children, most of whom were between the ages of nine and eleven, who would otherwise have been in the third and fourth grades. The handicaps from which they suffered were physically disabling ones and included cerebral palsy, muscular dystrophy, fragile bones, and malformed limbs. Some children were able to walk with the aid of crutches and braces; others were completely confined to wheel chairs. The psychologically tested mental abilities of the children spanned all levels up from educable mentally retarded.

On 30 April 1974 Superintendent Rolland W. Jones sent a letter to petitioner by certified mail in which he said:

I am writing to advise you pursuant to North Carolina General Statute 115-142(h)(2) that I intend to recommend to the Board of Education that you be dismissed effective at the close of the 1973-74 school year. The grounds for my recommendation include, but are not limited to, inadequate performance, insubordination, neglect of duty, and failure to comply with requirements of the board.

Baxter v. Poe

Petitioner notified Jones on 21 May 1974 that she requested a review of his recommendation by a panel of the Professional Review Committee, pursuant to G.S. 115-142(h)(3)(i). On 9 August 1974 the Board voted to suspend petitioner without pay pending final determination of the proceeding, and Jones notified petitioner of this decision by letter dated 14 August 1974.

The five-member panel of the Professional Review Committee, after conducting a hearing at which both petitioner and Superintendent Jones were represented by counsel, issued a report dated 26 August 1974. The majority report recommended that petitioner be reinstated with back pay and retention of tenure and that petitioner be transferred to another school and allowed to teach normal children. A minority report, issued by one of the two professional members of the panel, stated that petitioner "is guilty of inadequate performance, 'gross' insubordination, neglect of duty, and failure to comply with Board requirements."

On 9 September 1974 Jones submitted, pursuant to G.S. 115-142(i)(5), his written recommendation to the Board that petitioner be dismissed "for reasons set forth in a letter from me to her dated April 30, 1974."

William E. Poe, Chairman of the Board, informed petitioner pursuant to G.S. 115-142(i)(6) that the Superintendent's recommendation had been received, that she was entitled to a hearing, and that the hearing if requested would be held on 1 October 1974.

Petitioner's attorney requested the hearing, and the hearing was held on 1, 2, and 7 October 1974. On 14 October 1974 the Board voted unanimously to terminate petitioner's employment and to dismiss her on the grounds of inadequate performance, insubordination, neglect of duty, and failure to comply with Board guidelines and policy. The Board entered this order after making findings of fact and concluding that "all four (4) grounds for dismissal upon which the Superintendent has based his recommendation of dismissal are true and substantiated upon the basis of competent evidence adduced at these hearings."

A copy of the Board's findings of fact and order were sent to petitioner by Chairman Poe under cover of letter dated 14 October 1974.

By complaint filed 14 November 1974 petitioner appealed from the decision of the Board to the Superior Court of Mecklenburg County pursuant to G.S. 115-142(n). She alleged that the board had violated both the provisions of G.S. 115-142 and petitioner's constitutional due process rights and that the Board's findings of fact and order were unsupported by any competent evidence.

By answer filed 18 December 1974 defendants denied petitioner's allegations. Upon defendants' motion Judge Snepp on 15 December 1976 filed an order that petitioner's appeal be presented to the Superior Court in accordance with G.S. Ch. 143, Art. 33.

The hearing was held during the 15 August 1977 Civil Non-Jury Session of Mecklenburg Superior Court. By order filed 28 September 1977 the trial court made detailed findings of fact concerning all prior proceedings in this matter and made the following conclusions:

1. The procedures adopted by the Board and rulings made with reference to the admission of evidence were fair and without error.

*    *    *

2. Each of the findings of fact by the Board is supported by substantial, competent evidence.

*    *    *

3. The findings of fact by the Board support and justify the Board's conclusion that the grounds upon which Superintendent Jones recommended petitioner's dismissal were true and substantiated.

On these findings and conclusions, the court affirmed the Board's order. Petitioner appeals.

*James, McElroy & Diehl, by William K. Diehl, Jr., and Gary S. Hemric for the appellant.*

*John G. Golding and Harvey L. Cosper, Jr., for the appellees.*

PARKER, Judge.

The scope of the Superior Court's review of the Board's decision in this case and the power of that court in disposing of the case were governed by former G.S. 143-315 (now G.S. 150A-51), which was in effect at the time of the Board hearings in this matter. That statute provided:

> The court may affirm the decision of the agency or remand the case for further proceedings; or it may reverse or modify the decision if the substantial rights of the petitioners may have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
>
> (1) In violation of constitutional provisions; or
>
> (2) In excess of the statutory authority or jurisdiction of the agency; or
>
> (3) Made upon unlawful procedure; or
>
> (4) Affected by other error of law; or
>
> (5) Unsupported by competent, material, and substantial evidence in view of the entire record as submitted; or
>
> (6) Arbitrary or capricious.

## DUE PROCESS

[1] The petitioner's first group of contentions concerns due process. In addressing these contentions, we rely in large measure on the opinion of this Court by Judge (now Chief Judge) Morris in *Thompson v. Board of Education*, 31 N.C. App. 401, 230 S.E. 2d 164 (1976), *rev'd on other grounds*, 292 N.C. 406, 233 S.E. 2d 538 (1977). The Supreme Court reversed only that part of the decision of this Court in Thompson which held that the evidence of neglect of duty on the part of the teacher-petitioner in that case was substantial, and the Supreme Court's opinion left standing that portion of Judge Morris's opinion in which she dealt with the due process issues raised in *Thompson*.

Petitioner in the present case, as did the petitioner in *Thompson*, contends that she has been denied due process. We do not agree. The Charlotte-Mecklenburg Board of Education scrupulously followed the elaborate dismissal procedures man-

dated by G.S. 115-142. After giving petitioner the required notice, the Board held hearings which extended over three evenings in which the petitioner was represented by counsel, was given the opportunity to cross-examine the Superintendent's witnesses, and was permitted to present her own evidence.

Petitioner's contentions regarding due process are largely based on a fundamental misconception of the procedures involved in a case of this nature. The procedures prescribed by G.S. 115-142 for the dismissal of a career teacher are essentially administrative rather than judicial. As was pointed out in this Court's opinion in *Thompson, supra,* the Board is not bound by the formal rules of evidence which would ordinarily obtain in a proceeding in a trial court. Nor are the Rules of Civil Procedure applicable. G.S. 1A-1. While a Board of Education conducting a hearing under G.S. 115-142 must provide all essential elements of due process, it is permitted to operate under a more relaxed set of rules than is a court of law. Boards of Education, normally composed in large part of non-lawyers, are vested with "general control and supervision of all matters pertaining to the public schools in their respective administrative units," G.S. 115-35(b), a responsibility differing greatly from that of a court. The carrying out of such a responsibility requires a wider latitude in procedure and in the reception of evidence than is allowed a court.

The Charlotte-Mecklenburg Board of Education employed at petitioner's hearing the same rule of evidence promulgated by the State Board of Education and used by the Wake County Board of Education in *Thompson.* The rule permits boards of education to admit and give probative effect to "evidence that is of a kind commonly relied on by reasonably prudent men in the conduct of serious affairs." Petitioner contends that this rule is constitutionally invalid both *per se* and as applied at the hearing in this case in that it violated her due process rights. We do not agree. This rule of evidence was approved in *Thompson.* It is not constitutionally invalid *per se.* It allows the boards of education to consider a wide range of evidence, as they properly should, in reaching their decisions. Petitioner's protection lies in the provision in G.S. 143-315(5) which gives to the Superior Court power to reverse or modify the Board's decision if petitioner's substantial rights have been prejudiced because the administrative decision

was "[u]nsupported by competent, material, and substantial evidence in view of the entire record."

Petitioner points to the admission at the hearing of hearsay evidence and contends erroneously that this was reversible error. The Board very properly heard such evidence in this case in order to complete its investigation. Evidence of the sort complained of can, and in this case did, provide the necessary background for understanding the matter into which the Board was inquiring.

Petitioner objects to the admission of evidence of events which occurred more than three years before 30 April 1974 and bases her objection on G.S. 115-142(e)(4). We need here only point out that G.S. 115-142(e)(4) prohibits a Board of Education from *basing* dismissal "on conduct or actions which occurred more than three years before the written notice of the superintendent's intention to recommend dismissal is mailed to the teacher." There is no prohibition against the Board *hearing* evidence of this nature. Petitioner has made no showing that the Board based her dismissal on conduct of petitioner beyond the three year limit. It was proper for the Board to hear this type of evidence in order to learn of the background of the case before it.

Petitioner further argues, under the rubric of due process, that the Board did not have the requisite degree of impartiality and that this lack of impartiality is shown by the manner in which the hearing was conducted. We have examined the transcript of the hearing in detail and find no evidence of actual bias on the part of any Board member. Petitioner lays stress, in arguing that the Board lacked impartiality, on the following admission made by one of the Board members, Marilyn Huff, at the hearing before Judge Griffin in the Superior Court:

"As to whether I understood there was some question of physical abuse of children before the hearing began, I knew, I think most people in the community knew the reasons for Mrs. Baxter's, the recommendation by the Superintendent that she be terminated."

As above noted, the Board of Education is vested by G.S. 115-35(b) with general supervisory authority over the schools within its administrative unit. In the exercise of this authority

Board members have a duty to keep themselves apprised of situations such as the one the evidence presented at the hearing in this case discloses. As Judge Morris pointed out in this Court's opinion in *Thompson v. Board of Education, supra,* "mere familiarity with the facts of a case gained by an agency in the performance of its statutory duties does not disqualify it as a decisionmaker." 31 N.C. App. at 412, 230 S.E. 2d at 170.

After a thorough examination of the transcript of the hearing before the Board we affirm the finding of the Superior Court that "the procedures adopted by the board and rulings made with reference to the admission of evidence were fair and without error."

## SUBSTANTIAL EVIDENCE IN VIEW OF THE ENTIRE RECORD

[2]   The petitioner's second and final major contention is that the Superior Court erred in its finding that "[e]ach of the findings of fact by the Board is supported by substantial, competent evidence." The required standard of review is defined by G.S. 143-315(5), *supra.* It was described by Justice Copeland in the Supreme Court's opinion in *Thompson v. Board of Education, supra,* as follows:

This standard of judicial review is known as the "whole record" test and must be distinguished from both *de novo* review and the "any competent evidence" standard of review. *Universal Camera Corp. v. N.L.R.B.,* 340 U.S. 474, 95 L.Ed. 456, 71 S.Ct. 456 (1951); *Underwood v. Board of Alcoholic Control,* 278 N.C. 623, 181 S.E. 2d 1 (1971); Hanft, *Some Aspects of Evidence in Adjudications by Administrative Agencies in North Carolina,* 49 N.C.L. Rev. 635, 668-74 (1971); Hanft, Administrative Law, 45 N.C.L. Rev. 816, 816-819 (1967). The "whole record" test does not allow the reviewing court to replace the Board's judgment as between two reasonably conflicting views, even though the court could justifiably have reached a different result had the matter been before it *de novo. Universal Camera Corp., supra.* On the other hand, the "whole record" rule requires the court, in determining the substantiality of evidence supporting the Board's decision to take into account whatever in the record

fairly detracts from the weight of the Board's evidence. Under the whole evidence rule, the court, may not consider the evidence which in and of itself justifies the Board's result, without taking into account contradictory evidence or evidence from which conflicting inferences could be drawn. *Universal Camera Corp., supra.*

292 N.C. at 410, 233 S.E. 2d at 541.

The grounds on which the Board based its order that petitioner be dismissed are set forth in G.S. 115-142(e):

(1) No career teacher shall be dismissed or demoted or employed on a part-time basis except for:

    a. Inadequate performance;

*    *    *

    c. Insubordination;

    d. Neglect of duty;

*    *    *

    j. Failure to comply with such reasonable requirements as the board may prescribe;

Our task on this appeal is, by application of the "whole record" test to the record of the hearings before the Charlotte-Mecklenburg Board of Education held on 1, 2 and 7 October 1974, to determine whether there is substantial evidence, looking at the record as a whole, of any one of the four grounds which formed the basis of the Board's 14 October 1974 dismissal order.

Each finding of fact was made with regard to petitioner's employment during the 1971-72, 1972-73, and 1973-74 school years. The second finding of fact was that the petitioner was guilty of insubordination. The Board found that petitioner's insubordination consisted of her continued administration of corporal punishment to her handicapped students after being specifically instructed by her principal, Mrs. Crosby, not to do so without the principal's prior approval and the presence of an adult witness. This finding is amply supported by substantial evidence in the record.

Mrs. Crosby, the principal of Billingsville Elementary School, testified that during the 1971-72 school year she received a complaint from the parents of Susan Chapman that petitioner "had been hitting Susan in the head." Petitioner admitted at the time of the incident and also at the hearing that she had "tapped" Susan Chapman. Petitioner's classroom aide, Virginia Wallace, testified at the hearing that she had seen petitioner whip Susan Chapman "several times." Mrs. Crosby called in petitioner and the other three orthopedic teachers at this time and asked them:

> [P]lease, do not strike these children anywhere. I asked them specifically not to even punish them at all. "If there's a child in your class"—I didn't tell the total staff this, but I told those three teachers. "Do not whip any of these children. If you feel you have to whip them, I would like to know who they are and I would like to witness it. I would like for you to tell me why and I would like not to have them whipped at all. I would like for you not to thump them." I had gotten messages that she had thumped, hit, and all these kind of things. I said, "don't hit them at all."

Billingsville orthopedic teachers Catherine Erlandson and Ann Boiter both confirmed that Crosby had forbidden corporal punishment of orthopedically handicapped children, and petitioner admitted at the hearing that such an order had been given by the principal.

In October 1972, Principal Crosby received a complaint from the mother of Michael Sinclair that petitioner had hit her son on the head, producing a "big knot," and that the boy had gone home and cried all night. The complaint was made by Mrs. Sinclair both orally and in a letter introduced into evidence. Personnel in the principal's office managed to persuade the mother not to carry out her threat of beating petitioner, but the mother remained at school all day "body-guarding" the boy. At the time, petitioner admitted striking the boy, but said, "I just tapped him."

Petitioner at the hearing admitted:

> Michael was another chair victim and a dystrophy victim. . . . I did do, this, (Witness indicates with hands), and asked him to get to his work. . . . He cried some.

Subsequent to the Michael Sinclair incident, Principal Crosby wrote a letter dated 31 October 1972 to petitioner in which she detailed the incident, as well as other incidents which had been brought to her attention by parental complaints, and asked petitioner once again "to refrain from this sort of practice."

In the spring of 1973, petitioner came up for consideration for tenure. Principal Crosby expressed to petitioner orally and in person her reservations about giving petitioner tenure because, "Leona, you have a tendency to hit children." Crosby stated that she agreed to give petitioner tenure upon her word that she would not strike the children any more, and petitioner told Crosby two or three times, "I'm not going to hit anybody else no more, no more."

In the April 1973 evaluation of petitioner, Crosby wrote:

Miss Baxter was experiencing difficulty in classroom management and was employing the use of physical punishment in an improper manner. She has made improvement in this area. It is understood, by her, that this type punishment is not acceptable.

Petitioner's receipt of this evaluation was acknowledged in writing.

Crosby testified at the hearing concerning the above-quoted remarks on the evaluation sheet:

I just hated to write down, if you do this again, this is it. But, I told her in very plain English; I said, "Leona, if you whip another child in an improper manner, I'm not going to recommend your reemployment." And, she understood this.

Principal Crosby explained that by "improper manner" she meant that she expected petitioner to bring the child to the principal's office and whip it there, if petitioner had to whip it, so that at least the whipping would be in the principal's presence. Crosby testified that petitioner never brought a child to her office for paddling.

During the 1973-74 school year, Crosby received a complaint from the mother of Cheryl Springs that petitioner had whipped the girl for not doing her homework, making her afraid to come to school. Crosby called Cheryl Springs into her office and asked her

about the incident. According to Crosby's account, the girl, a victim of cerebral palsy, said that when she arrived at school without her homework after her mother had said she had accidentally thrown the homework away,

> "Mrs. Baxter said, 'Cheryl', and she shoved me" and she said, "she knocked me out of the chair, when she said, 'Cheryl, where is your homework.' And I was trying to tell her that (sic) my mama said and then she whipped me." And I said, "well, how did she whip you." She said, "she took this big stick and just hit me, whop, whop, whop."

Cheryl Springs' mother, Dorothy Butler, testified about this incident and said Cheryl told her that "she hit her while she was down." Irene Walker, a teacher's aide, testified that she had found Cheryl Springs crying in the bathroom. When asked, the child told her that petitioner had whipped her for not bringing homework to school.

Petitioner testified "I took a ruler and gave her a few spanks across the buttocks." Petitioner denied knocking Cheryl Springs out of her chair and said that she had punished the girl because, "I couldn't get any work out of her in any way, shape or form. Neither calls to the home, notes to the home, talking with her or anything like that hadn't (sic) done any good."

Following the Cheryl Springs incident, Crosby called in petitioner's classroom aide, Virginia Wallace, and asked if she had seen petitioner hit any one that year. Crosby testified that Wallace said she had seen petitioner hitting children in the head or shaking them. Virginia Wallace testified that she saw petitioner whip Bobby Baker "several times" in the period of time up through the year before the hearing and that she saw petitioner during several years "rap" children in the classroom.

Irene Walker testified that during the 1973-74 school year, Annette Rush told her in the bathroom that petitioner had whipped her for not bringing homework. Frieda Maxwell, Catherine Erlandson's aide, testified that during the 1973-74 school year Annette Rush complained to her on the bus that her head hurt where petitioner hit her with a pencil.

In summary, by petitioner's own admission she struck Michael Sinclair and Cheryl Springs in violation of her principal's

orders. Petitioner's classroom aide testified that petitioner whipped Bobby Baker in violation of her principal's orders. Hearsay evidence from two independent sources, which was not impeached, indicates that Annette Rush was also subjected to corporal punishment in violation of Principal Crosby's orders. We find that the Superior Court was correct in concluding that the Board's finding of insubordination was based on substantial evidence. We need not pass on the question whether the evidence of the other three grounds was substantial. A finding that the evidence of any of the grounds listed under G.S. 115-142(e)(1) was substantial justifies dismissal where, as here, the teacher was notified that dismissal was based on that ground. We note, however, that there is substantial evidence in the record to support the Board's findings that, in addition to insubordination, petitioner was guilty of inadequate performance, neglect of duty, and failure to comply with requirements of the Board.

The Superior Court's 27 September 1977 order affirming the order of the Charlotte-Mecklenburg Board of Education's 14 October 1974 order terminating petitioner's employment is

Affirmed.

Judges HEDRICK and ERWIN concur.