**ALL AMERICAN LIFE AND CASUALTY COMPANY, Plaintiff-Appellant (83–1440), Plaintiff-Counter-Defendant-Appellee (83–1648/1649),**

v.

**OCEANIC TRADE ALLIANCE COUNCIL INTERNATIONAL, INC., Defendant-Appellee (83–1440), Defendant-Appellant (83–1648/1649).**

Nos. 83–1440, 83–1648 and 83–1649.

United States Court of Appeals,
Sixth Circuit.

Argued Sept. 19, 1984.

Decided March 8, 1985.

Arthur M. Hoffeins (argued), E.R. Whinham, Detroit, Mich., for All American Life and Cas. Co.

Robert B. Delaney, Plymouth, Mich., Michelle A. Thomas (argued), Detroit, Mich., for Oceanic Trade Alliance Council Intern., Inc. in Nos. 83–1440 and 83–1648.

Richard G. Ward, Michelle Thomas (argued), Sullivan, Ward & Bone, Detroit, Mich., Robert B. Delaney, Plymouth, Mich., Charles Warner, Birmingham, Mich., for Oceanic Trade Alliance Council Intern., Inc. in No. 83–1649.

Before KEITH and MARTIN, Circuit Judges, and BELL, District Judge.*

KEITH, Circuit Judge.

This is an appeal, in a diversity case, centering upon a "key man" life insurance policy. The plaintiff, All American Life and Casualty Company, has appealed from a jury verdict and order entering partial final judgment in favor of the defendant, Oceanic Trade Alliance Council International, Inc., in the amount of $2,500,000 plus pre-judgment interest and costs. The defendant has cross-appealed the denial of an

---

* Hon. Samuel H. Bell, United States District Court for the Northern District of Ohio, sitting     by designation.

award of penal interest which the defendant alleges is authorized under a Michigan statute. For the reasons stated below, the judgment of the United States District Court for the Eastern District of Michigan is hereby affirmed.

Oceanic Trade Alliance Council International, Inc., (OTAC) was formed in October 1977, for the purpose of organizing and financing an ocean-going cruise vessel on which American products would be exhibited to prospective purchasers in the Middle East. This concept of a "floating tradeship" was the idea of Stanley B. "Guy" Willetts, an independent businessman with contacts and experience in the Middle East. At the time of incorporation, Mr. Willetts was the chief operating officer and a director of OTAC. The original incorporators, officers and directors of OTAC also included John Kiley, Mat Alfei, and Richard D. French. In return for services to the corporation, common stock was issued to Willetts, Kiley, Alfei, French and a separate corporation known as "Richard D. French & Associates, Inc." or the "French Group" (comprised of Kiley, Alfei and French). Additionally, shares of preferred stock in the corporation were sold to investors for money.

On December 27, 1977, All American Life and Casualty Company (All American) issued to OTAC, as owner, a policy of insurance on the life of Guy Willetts, with a payable death benefit of $2,500,000. The life insurance was known as a "key man" policy, designed to reflect the calculated worth of Mr. Willetts to OTAC. Pursuant to the terms of the insurance policy, the death benefit was to be payable to the beneficiary, OTAC, immediately upon receipt of proof of the death of Guy Willetts.

On February 1, 1979, Guy Willetts was murdered. At the time of Mr. Willetts' death, the insurance policy on his life issued by All American was in effect. On or about February 3, 1979, John Kiley filed a claim on behalf of OTAC with All American for the proceeds of the life insurance policy. This claim was received by All American on February 8, 1979.

Shortly after Mr. Willetts' death, the Detroit Police Department arrested John Kiley, Mat Alfei, Lonnie Thomas and Harold Jackson in connection with the Willetts murder. Mr. Kiley was charged with first degree murder and conspiracy to commit murder. Mr. Alfei was charged with conspiracy to commit murder. Mr. Thomas, the alleged "hit man," was originally charged with first degree murder. The Wayne County Prosecutor's Office, however, permitted Thomas to plead guilty to a lesser charge of second degree murder in exchange for a promise by Thomas to testify against Kiley. Also, pursuant to an order entered by the Honorable Samuel Gardner, Chief Judge of the City of Detroit Recorder's Court, Mr. Jackson received immunity from prosecution in exchange for an agreement to testify against Kiley, Alfei and Thomas at the murder trial.

Prior to the start of the Willetts murder trial, the conspiracy charges against Mat Alfei were dismissed. Mr. Kiley was tried upon the first degree murder charge and acquitted by a jury.

On or about April 30, 1979, All American filed its complaint in the instant matter seeking to be relieved of the contractual obligation to pay the proceeds of the key man life insurance policy to OTAC. In the complaint, All American admitted "[t]hat [it] has refused to honor the claim of [OTAC] to the policy proceeds because, since the death of Guy B. Willetts was engineered by the stockholders and the remaining living officers of [OTAC], namely, John F. Kiley and Mat Alfei, among others, both of whom dominated the affairs of [OTAC] at the time, [OTAC] would be unjustly enriched by benefitting from the criminal acts of its officers and agents, all of which acts are chargeable to [OTAC], and that it would be against public policy to allow [OTAC] to recover on said policy for a murder initiated by its officers and agents." Joint Appendix at 27a.

In its answer to the complaint, OTAC denied each element of the alleged "corporate homicide." Additionally, on or about May 18, 1979, OTAC filed its counterclaim,

sounding in breach of contract and premised on All American's wrongful refusal to pay the proceeds of the key man insurance policy owned by OTAC on the life of Guy Willetts. In its counterclaim, OTAC demanded the full policy proceeds plus interests, costs and attorney fees. Prior to trial All American had settled with all of the OTAC shareholders who had paid cash for their stock. Under the settlement agreement, All American received an option to acquire all of these shareholders' stock.

The settlement agreement was reviewed by the trial court, *in camera,* and copies of the agreement were furnished to counsel for the shareholders who had not settled. After this settlement agreement became effective, counsel for the settling shareholders ceased to be active in this litigation, although the settling shareholders were never formally dismissed as parties.

Also prior to trial, in response to motions *in limine* and on its own motion, the court established certain ground rules concerning the conduct of the trial. In essence these rules were:

1. The trial was to be conducted as if All American and OTAC were the only litigants.

2. There was to be no mention of the 1982 conviction of Richard D. French, an individual shareholder of OTAC, and president and an equal shareholder with Kiley and Mat Alfei in the French Group, by a federal court for giving false information to obtain a 1977 loan for the French Group from a national bank.

3. There was to be no mention of the settlement by All American with the shareholders who paid cash for their stock in OTAC.

4. There was to be no mention of any business or social relationship between Harold Jackson, the person who arranged the killing of Willetts, and Chief Judge Samuel Gardner of the Detroit Recorder's Court, the judge who approved the state prosecutor's application for a grant of immunity to Harold Jackson.

The trial commenced on April 4, 1983. The jury was informed of the posture of the active litigants, and that for the purposes of the litigation OTAC was to be considered as if it were the plaintiff seeking the proceeds of the insurance policy from All American, and that All American was to be considered as if it were the defendant asserting an affirmative defense of corporate homicide. While each party bore the burden of proof concerning its claim, the court informed the jury that the insurance policy had been issued, the premium paid and but for All American's affirmative defense, OTAC would be entitled to judgment for the amount of the policy.

Further, in an effort to facilitate the jury's ultimate resolution of the claims presented, the court submitted the following interrogatories to the jury:

Question No. 1: Do you find that Kiley and Alfei conspired to and caused the murder of Willetts?

Put an X in one box or the other. If the answer to Question No. 1 is Yes you will skip to Question No. 4. If the answer to Question No. 1 is No move on to Questions Nos. 2 and 3.

Question No. 2: Do you find that Kiley conspired to and caused the murder of Willetts?

Yes or No.

Question No. 3: Do you find that Alfei conspired to and caused the murder of Willetts?

Yes or No.

If your answers to Questions No. 1, No. 2, and No. 3 are No, you will answer no further questions. If the answer to Question No. 1, No. 2, or No. 3 is Yes you will then move on to Question No. 4....

Question No. 4: Do you find that it was a purpose of such conspiracy to enable OTAC to receive the proceeds of the life insurance policy?

Yes or No.

You will answer Question No. 5 only if your answer to Question No. 4 is Yes. In Questions No. 5 and 6 the word "conspirators" refers to both Alfei and Kiley

or to only one of them, according to your answers to Questions 1, 2 and 3.

Question No. 5: Do you find that such conspirators substantially dominated the business affairs of OTAC?

Yes or No.

You will answer Question No. 6 only if your answer to Question No. 5 is No.

Question No. 6: Do you find that such conspirators were members of a group which substantially dominated the business affairs of OTAC?

Yes or No.

Joint Appendix at 453a–453a(1).

The jury returned its verdict by answering "No" to Questions 1, 2, and 3. On May 6, 1983, OTAC filed a motion for entry of judgment on this special verdict, seeking the award of the value of the life insurance policy, together with costs, statutory interest, and attorney fees. In the bill of costs and partial calculation of interest submitted, OTAC requested the award of 12% penalty interest pursuant to Michigan Compiled Laws Section 500.2006. Additionally, a demand was also made for prejudgment interest pursuant to Michigan Compiled Laws Section 600.6013.

On May 20, 1983, the district court issued an order for entry of judgment upon fewer than all claims. In its order, the trial court determined that OTAC was entitled to judgment against All American in the sum of $2,500,000 plus costs and prejudgment interest pursuant to Section 600.6013. Joint Appendix at 458a. All American filed a notice of appeal from the entry of partial judgment.

In its May 20, 1983 order the trial court had taken under advisement OTAC's motion for penalty interest pursuant to Section 500.2006 of the Michigan Uniform Trade Practices Act. The parties were given thirty days in which to request certification to the Michigan Supreme Court on the issue of whether OTAC was entitled to the penalty interest.

Neither party availed itself of the opportunity to request certification to the Michigan Supreme Court. Consequently, on July 25, 1983, the district court decided that OTAC was not entitled to the 12% statutory penalty interest authorized by Section 500.2006. *See* Joint Appendix 460a–462a. OTAC filed its cross-appeal from this final judgment.

Upon appeal to this Court the parties have identified five issues to be addressed. In essence, these issues are:

1) Whether the trial court committed reversible error by refusing to permit All American Life and Casualty Company to recall Lonnie Thomas in order to have Mr. Thomas testify as to his knowledge of attempts by Attorney Robert Delaney and John Kiley to tamper with Thomas' testimony at Kiley's murder trial;

2) Whether the trial court committed reversible error by refusing to allow All American Life and Casualty Company to elicit testimony from state prosecutor Timothy Kenny with respect to the participation of the Honorable Samuel J. Gardner, Chief Judge of the City of Detroit Recorder's Court, in granting immunity from state prosecution to Harold Jackson;

3) Whether the trial court committed reversible error in refusing to admit extrinsic evidence regarding the criminal conviction of Richard D. French, Jr., for the purposes of impeaching witness John Kiley;

4) Whether the trial court committed reversible error in refusing to award OTAC the 12% penalty interest pursuant to Michigan Compiled Laws Section 500.-2006;

5) Whether the trial court committed reversible error in ruling that any penalty interest awarded pursuant to Michigan Compiled Laws Section 500.2006 must be set off by any prejudgment interest allowed pursuant to Michigan Compiled Laws Section 600.6013.

■ We address first the trial court's alleged error in not allowing All American Life to recall Lonnie Thomas in order to have him testify regarding alleged attempts to tamper with his testimony at the Kiley murder trial. During the course of

the instant civil trial, All American called Lonnie Thomas as a witness. Mr. Thomas, however, invoked the fifth amendment privilege against self-incrimination and refused to provide any substantive evidence. As a result, All American elected to read into evidence Mr. Thomas' testimony from the Kiley murder trial.

Late in the instant civil trial, All American asked to recall Mr. Thomas in order to impeach him with newly discovered evidence. This newly discovered evidence consisted of the transcript of certain suppressed statements made by Mr. Thomas at *in camera* hearings before Judge Justin Ravitz (not the presiding judge at the murder trial) during the Kiley murder trial. Included in the transcript of these *in camera* hearings were allegations that John Kiley and his attorney (also the attorney for OTAC in the instant trial) Robert Delaney had attempted to bribe Mr. Thomas in exchange for testimony at the murder trial favorable to Mr. Kiley. In denying the offer of this evidence, the trial judge expressed a concern, among others, that the proffered evidence would be more prejudicial than probative. Joint Appendix at 386a.

Federal Rule of Evidence 403 provides in part: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury...." In construing this rule this Court has consistently held that: "the admission of relevant, potentially prejudicial evidence is placed within the sound discretion of the trial court." *E.g., United States v. Brady*, 595 F.2d 359, 361 (6th Cir.), *cert. denied*, 444 U.S. 862, 100 S.Ct. 129, 62 L.Ed.2d 84 (1979).

From our review of the record in this case, even viewing the proffered evidence in the light most favorable to the proponent, we cannot say that the trial court abused its discretion in excluding this evidence. Accordingly, we find All American's allegation of reversible error with respect to this evidentiary ruling to be without merit.

Next, we address the trial court's alleged error in not allowing All American to examine Assistant Wayne County Prosecutor Timothy Kenny with respect to Judge Gardner's participation in granting Harold Jackson immunity from prosecution for the murder of Guy Willetts. Prior to the trial of the instant matter, All American filed a motion *in limine* seeking to exclude any reference to the fact that Harold Jackson was granted immunity from prosecution for the murder of Guy Willetts by Chief Judge Samuel Gardner of the Detroit Recorder's Court or that Mr. Jackson and Judge Gardner were co-incorporators of a Michigan corporation. Having satisfied itself that there was no suggestion of collusion or other impropriety between Judge Gardner and Mr. Jackson, the trial court granted All American's motion and made it known that it would find any attempted proof of a business or personal relationship between the two men more prejudicial than probative. *See* Joint Appendix at 48a.

However, during the conduct of the trial, Judge Gardner's name was mentioned by witnesses on three isolated occasions. From our review of the record, this Court believes that counsel for All American, in effect, invited the witnesses to make reference to Judge Gardner. For example, during All American's case-in-chief, Mr. Kiley testified about various proposed real estate deals between the French Group and Mr. Jackson. When asked by OTAC's counsel to identify some of the investors represented by Jackson in these transactions, Mr. Kiley described them generally as "an assistant chief of police" and a "former circuit judge." At this point, All American's counsel interrupted and insisted: "I'm going to have to ask he name names." Whereupon, among others, Mr. Kiley mentioned Judge Gardner's name. Joint Appendix at 117a–118a.

Under the "invited error" doctrine, it is an accepted matter of law that where the injection of allegedly inadmissible evidence is attributable to the action of the party seeking to exclude that evidence, its introduction does not constitute reversi-

ble error. *See United States v. Lerma,* 657 F.2d 786, 788 (5th Cir.1981), *cert. denied,* 455 U.S. 921, 102 S.Ct. 1279, 71 L.Ed.2d 463 (1982); *United States v. Martinez,* 604 F.2d 361, 366 (5th Cir.1979), *cert. denied,* 444 U.S. 1034, 100 S.Ct. 708, 62 L.Ed.2d 671 (1980). Accordingly, the three scattered references to Judge Gardner cannot, in these circumstances, constitute reversible error.

■ It must be noted that it was at the request of All American that the pretrial order issued precluding presentation of any evidence which would tend to establish the existence of a personal or business relationship between Judge Gardner and Mr. Jackson. It must also be noted that the trial court consistently enforced this order throughout the course of the trial. *See, e.g.,* Joint Appendix at 353a(1)–353a(6) (excluding from evidence the Articles of Incorporation of the Hannibal Fund Limited). Thus, it was in this context that late in the trial, the trial judge rebuked All American's counsel for seeking to hold open its rebuttal case in order to have Assistant Wayne County Prosecutor Timothy Kenny testify as to why Judge Gardner was the judge who granted Harold Jackson immunity. Given the context of the requested pretrial order, the consistent rulings excluding such evidence and the three passing references to Judge Gardner which we find to have been invited by counsel, we cannot say the trial court abused its discretion in excluding the proposed line of testimony of Prosecutor Kenny. Accordingly, we find All American's allegation of reversible error with respect to this evidentiary ruling to be without merit.

Next, we address the trial court's alleged error in refusing to allow All American to impeach John Kiley with extrinsic evidence concerning the criminal conviction of Richard French. It appears from the pleadings that prior to trial the district court entered a pretrial order excluding any extrinsic evidence of the 1982 conviction of Richard French for bank fraud. It also appears from the pleadings that the reason underlying this ruling was the trial court's concern

that the prejudicial effect of such evidence would outweigh its probative value. *See* Appellee's Brief at 70; Appellant's Reply Brief at 14. During the trial All American's counsel questioned Mr. Kiley about his financial status and a financial statement he had developed in seeking a personal loan in 1977. In discussing the value of his stock in Richard D. French and Associates, the following colloquy occurred:

Q. So you felt that your interest was worth $224,000, is that right

A. Yes, we did.

Q. That estimate turned out to be inflated, didn't it?

A. At that time that is what we felt our business was worth and I might add the bank had loaned French & Associates a lot of money. The president of the bank had been in our office, reviewed records with Mr. French. They were knowledgeable of what they were doing. They didn't loan this money because we were doing nothing.

Joint Appendix at 116a; Appellee's Brief at 58.

■ Following this colloquy, All American argued that the witness had "opened the door" and, therefore, the court should ignore its pretrial order and allow the introduction of evidence concerning the French conviction. Joint Appendix at 116a–117a. The trial court found All American's argument to be entirely unpersuasive. We agree. As was discussed previously, the admission of potentially prejudicial evidence is placed within the sound discretion of the trial court. On the record before us, we cannot say that the trial court abused its discretion in excluding this evidence. Accordingly, we again find All American's allegation of reversible error to be without merit.

Next, we address the trial court's alleged error in refusing to award OTAC 12% penalty interest pursuant to the Michigan Uniform Trade Practices Act. Section 500.-2006 provides, in part:

Sec. 2006. (1) A person must pay on a timely basis to its insured, an individual or entity directly entitled to benefits un-

der its insured's contract of insurance, or a third party tort claimant the benefits provided under the terms of its policy, or, in the alternative, the person must pay to its insured, an individual or entity directly entitled to benefits under its insured's contract of insurance, or a third party tort claimant 12% interest, as provided in subsection (4), on claims not paid on a timely basis. Failure to pay claims on a timely basis or to pay interest on claims as provided in subsection (4) is an unfair trade practice unless the claim is reasonably in dispute.

In construing this statute the trial court stated its belief that an award of penalty interest was appropriate only when the claim is not "reasonably in dispute." The trial court also noted:

> Moreover, the Court is convinced that whether the claim is "reasonably in dispute" is a question for the court to decide. Under any version of the facts as presented at trial of this matter, the Court finds that the issue of corporate homicide in this case rendered the claim reasonably in dispute. If the matter were held to be an issue for the jury, the Court would have directed a verdict upon it.

Joint Appendix at 461a–462a.

In its cross-appeal of the denial of a penalty interest award OTAC essentially makes two arguments. First, OTAC contends that recent cases by the Michigan Court of Appeals construing this statute establish the proposition that an insurer may refuse to pay a claim and not be subjected to this penalty interest sanction "only where the amount of loss or accuracy of the proof of loss is reasonably in dis-

pute." Appellee's Brief at 84. Second, OTAC contends that the penalty interest provision of Section 500.2006 "is identical" in purpose to the penalty interest section of the no fault personal protection insurance benefits provision, Mich.Comp.Laws Ann. § 500.3142. Thus, OTAC argues cases construing the no fault provision are instructive in construing the statute in question. *See* Appellee's Brief at 91, 88–94. Given the specific statutes in question, we do not agree.

With respect to OTAC's latter argument, we do recognize that in a footnote the Michigan Supreme Court did state parenthetically that a "similar purpose [was] intended" between Sections 500.2006 and 500.3142. *See Wood v. DAIIE*, 413 Mich. 573, 589 n. 17,321 N.W.2d 653 (1982). However, this is hardly sufficient authority to persuade us that the two sections are "identical" in purpose or that a case construing one section can be utilized indiscriminately to illuminate the construction of the other. More importantly, we note that in the Uniform Trade Practices provision the statute reads: "Failure to pay claims on a timely basis or to pay interest on claims as provided in subsection (4) is an unfair trade practice *unless the claim is reasonably in dispute.*" (emphasis added). Whereas, the No Fault Insurance Act contains no such qualification. *Compare* Mich.Comp.Laws Ann. § 500.2006 *with* Mich.Comp.Laws Ann. § 500.3142.[1] Thus, while similar, the two penalty provisions are not identical and cases construing one statute are not necessarily instructive in interpreting the other.

Similarly, with respect to OTAC's former argument, we also are not persuaded that

---

1. The relevant portion of the Michigan No Fault Insurance Act, Mich.Comp.Laws Ann. § 500.-3142, provides:

Sec. 3142. (1) Personal protection insurance benefits are payable as loss accrues.

(2) Personal protection insurance benefits are overdue if not paid within 30 days after an insurer receives reasonable proof of the fact and of the amount of loss sustained. If reasonable proof is not supplied as to the entire claim, the amount supported by reasonable proof is overdue if not paid within 30 days after the proof is received by the insurer.

Any part of the remainder of the claim that is later supported by reasonable proof is overdue if not paid within 30 days after the proof is received by the insurer. For the purpose of calculating the extent to which benefits are overdue, payment shall be treated as made on the date a draft or other valid instrument was placed in the United States mail in a properly addressed, post-paid envelope, or, if not so posted, on the date of delivery.

(3) An overdue payment bears simple interest at the rate of 12% per annum.

in utilizing the language "unless the claim is reasonably in dispute," the Michigan Legislature meant to limit the scope of this qualification in the Uniform Trade Practices Act only to situations in which the "amount of loss or accuracy of the proof of loss is reasonably in disute." Admittedly, the two principal decisions of the Michigan courts construing the "reasonably in dispute" proviso of Section 500.2006 have dealt with factual situations in which the amount of loss or the propriety of relying upon a statutorily invalid contract clause were at issue. *See O.J. Enterprises, Inc. v. Insurance Company of North America,* 96 Mich.App. 271, 292 N.W.2d 207 (1980), *leave to appeal denied* 410 Mich. 878 (1981); *Siller v. Employers Insurance of Wausau,* 123 Mich.App. 140, 333 N.W.2d 197 (1983). However, absent greater indication from the Michigan Legislature or courts that such a specialized and restricted reading should be given to this statute, this Court will be guided by the plain common sense meaning of the words.

■ In ruling upon OTAC's penalty interest argument, the trial court decided that the determination of whether a claim was "reasonably in dispute" was a matter for the court. Further, the trial court found that the issue of corporate homicide raised in this case was sufficient to render the insurance claim a matter reasonably in dispute. We agree. Accordingly, we find the alleged error concerning the denial of OTAC's claim for penalty interest to be without merit.

Last, we address the trial court's alleged error concerning certain language in its opinion to the effect that any penalty interest awarded pursuant to Michigan Compiled Laws Section 500.2006 would have to be reduced by the amount of prejudgment interest allowed pursuant to Michigan Compiled Laws Section 600.6013. Given our decision that OTAC is not entitled to an award of penalty interest, this matter concerning the construction and interrelationship of various Michigan statutes is not properly before this Court for decision. Furhter, as we read the trial court's memorandum opinion, it appears that the trial court did not definitively rule on this issue. But rather, the court merely suggested hypothetically in dicta that such a result would be appropriate. Our view of this matter is that since this issue is not necessary to the resolution of this case by the federal courts, it is a matter more appropriately left to the Michigan state courts.

Accordingly, we hold that judgment of the Honorable James P. Churchill of the United States District Court for the Eastern District of Michigan is hereby affirmed.