STATE OF NORTH CAROLINA v. JAMES BYRD MILLER

No. 289A87

(Filed 3 February 1988)

1. **Criminal Law § 91.12— Speedy Trial Act—time excluded for discovery—no violation**

   Defendant's speedy trial rights were not violated by the passage of 224 days between indictment and trial where all but 14 days were excludable due to defendant's request for discovery. N.C.G.S. § 15A-701.

2. **Criminal Law § 26.3— prior voluntary dismissal by State—finding that no dismissal taken—no error**

   The trial court did not err in a prosecution for first degree sexual offense by finding that no prior dismissal had been taken where the evidence, although somewhat ambiguous, did not fail to support the trial court's finding that, although the Clerk of Court originally noted voluntary dismissal in her minutes, the District Attorney had told the Clerk he would file a written dismissal later in the week and had not done so. N.C.G.S. § 15A-931.

3. **Criminal Law § 89.8— first degree sex offense—cross-examination of victim's mother—questions not allowed**

   The trial court did not err in a prosecution for first degree sex offense by not permitting defendant to cross-examine the victim's mother about her motivation for testifying where nothing in the record supported the contention that the witness was even subtly coerced into testifying under the threat of removal of her children by the Department of Social Services; moreover, defendant neglected to preserve the proffered evidence for the record. N.C.G.S. § 8C-1, Rule 103(a)(2) (1986), N.C.G.S. § 15A-1446(a) (1983).

4. **Criminal Law § 89.1— cross-examination—specific instance of conduct to show character for untruthfulness—not allowed**

   There was no error in a prosecution for first degree sex offense from the trial court's refusal to allow defendant to cross-examine the victim's mother about whether she was deliberately not reporting income in order to receive more government assistance where defendant failed to have the witness answer for the record. N.C.G.S. § 8C-1, Rule 608(b).

**5. Criminal Law § 34.7— first degree sex offense—subsequent offense—admissible**

    The trial court did not err in a prosecution for first degree sexual offense by admitting evidence of a separate offense committed by defendant against the same victim on the day after he committed the offense for which he stood trial. Evidence of other crimes, wrongs or acts is admissible under N.C.G.S. § 8C-1, Rule 404(b) to show motive, opportunity, intent, plan or identity; moreover, the witness sufficiently demonstrated personal knowledge of the incident in that she testified that she saw defendant lie on the couch with the child, saw him cover them both up with a sheet, saw the sheet moving up and down, immediately took the child away from defendant, and the boy complained shortly afterwards that defendant had hurt him.

BEFORE *Rousseau, J.,* and a jury at the 1 December 1986 Criminal Session of Superior Court, FORSYTH County, defendant was convicted of first-degree sexual offense, and judgment sentencing him to life imprisonment was entered on 3 December 1986. Defendant appeals pursuant to N.C.G.S. § 7A-27(a). Heard in the Supreme Court 9 December 1987.

*Lacy H. Thornburg, Attorney General, by Laura E. Crumpler, Assistant Attorney General, for the State.*

*R. Douglas Lemmerman for defendant-appellant.*

MEYER, Justice.

Defendant was convicted of first-degree sexual offense with a child under the age of thirteen. On appeal, he argues that the trial court erred in (1) excluding certain time periods under the Speedy Trial Act; (2) failing to find that defendant's case had previously been dismissed; (3) refusing to allow cross-examination of the State's material witness to show (a) her bias, interest or motivation for testifying and (b) a specific instance of conduct to show her character for untruthfulness; and (4) failing to exclude specific character evidence in defendant's cross-examination. We find no error in defendant's trial.

The State's evidence tended to show the following sequence of events. On 1 February 1986 defendant, who has only one leg, was living with Rosetta Harrison in her apartment. He was the father of Ms. Harrison's two-year-old son. Ms. Harrison and defendant had lived together spasmodically for about four years, during which they had both taken out various warrants against

each other. On this day, Ms. Harrison was standing at the kitchen counter peeling potatoes when she heard her son whining from the back bedroom. By stepping back from the counter, Ms. Harrison could see into the bedroom, and when she looked, she saw defendant "pushing [her] baby's mouth down on his penis." Defendant was naked, his penis was erect and he was "leaning back on the bed with the baby across his lap."

Ms. Harrison went into the bedroom, grabbed the child and ordered defendant to leave her home. Defendant did not leave. Ms. Harrison testified, over defendant's objection, that the next day, while defendant and the child were on the couch under a sheet watching television, she saw the sheet moving up and down, a motion she took to be defendant masturbating the child's penis. She ordered defendant out of her home, and drove him to his aunt's house where she dropped him off. The child subsequently complained that defendant had hurt him. A day or so later, Ms. Harrison told her mother and sister about the first incident. She reported the incident to the Department of Social Services about twelve days later. At trial, she testified that she had delayed calling the authorities because she was scared that her children might be taken into protective custody as a result of this and prior difficulties. This did not in fact happen.

Officer Barker of the Winston-Salem Police Department and Ms. Broyles of the Department of Social Services both testified to the effect that the statements Ms. Harrison made to them were consistent with her trial testimony as to the first incident. In addition, Ms. Harrison's ten-year-old daughter testified that on 1 February 1986 her baby brother was in the bedroom with defendant and at that time she heard the child screaming and saw her mother run into the bedroom. Ms. Harrison's sister testified that subsequent to the incident, the child complained to her that defendant had hurt his "ding-dong."

Defendant testified on his own behalf, denying that he had committed any sexual act against the child. He testified that he was trying to toilet train his son and that his attempts to do so were being misconstrued as sexual acts.

I

[1] Defendant first argues that the trial court erred in excluding certain time periods from computation for purposes of determin-

ing whether he was brought to trial within the 120-day time period mandated by N.C.G.S. § 15A-701. Defendant was indicted on 21 April 1986 but was not tried until 1 December 1986, a total of 224 days. On 15 October 1986 defendant filed a Motion to Dismiss based on speedy trial grounds. On that same date, upon motion of the State, the trial court entered an Order to Continue the case through 28 October 1986, because of the trial of other cases. In determining defendant's motion to dismiss for failure to comply with the Speedy Trial Act, the trial court excluded the time from 30 July 1986, on which date defendant requested a continuance so that his attorney could take a vacation, to 19 November 1986, when defendant filed a motion withdrawing all previous motions. Defendant now argues that the trial court had no grounds to exclude the time period from 11 August 1986, the end of his attorney's vacation, to 13 October 1986, the date of the calendaring of his case for trial, or to exclude the time period from 15 October 1986, the date of his filing of the Motion to Dismiss, to 19 November 1986, the date of his withdrawal of all motions except for his demand for a speedy trial.

Both of these time periods about which defendant complains occurred during the time frame which was otherwise excludable because of the pendency of defendant's discovery request.

The Speedy Trial Act's rule of exclusion, specifically section 701(b), includes the period of delay resulting from a defendant's discovery request. In *State v. Marlow*, 310 N.C. 507, 313 S.E. 2d 532 (1984), we held that a defendant's discovery request would toll the running of the Speedy Trial time limits

> until the occurrence of the earlier of the following events: (1) the completion of the requested discovery; (2) the filing by the defendant of a confirmation of voluntary compliance with the discovery request; or (3) the date upon which the court, pursuant to N.C. Gen. Stat. § 15A-909, has determined that discovery would be completed.

*Id.* at 515, 313 S.E. 2d at 538. "This excludable discovery period shall commence upon the service of defendant's motion for request for discovery upon counsel for the State, and shall encompass only such time which occurred after the speedy trial period has been triggered." *Id.* at 515, 313 S.E. 2d at 537. In defendant's case, the 21 April 1986 indictment triggered the mandatory 120-

day time period under the Act. On 23 April 1986, two days later, defendant made a Request for Discovery. From that date on, the running of the 120-day time period was tolled until one of the above three events set forth in *Marlow* occurred, which in this case was defendant's filing of his Notice of withdrawal of all motions except speedy trial on 19 November 1986. The reason for excluding the discovery time is sound: "Without possession of all the vital information to which he is entitled, the defendant could possibly be deprived of the benefit of necessary evidence. Presumably, a defendant would not be ready for trial until the needed material was received." *Marlow*, 310 N.C. at 516-17, 313 S.E. 2d at 538. Under *Marlow*, therefore, the trial judge could properly have excluded the time period between 23 April 1986 and 19 November 1986, a total of 210 days. The nonexcludable days (two days between the date of indictment and the filing of the Request for Discovery and twelve days between the filing of the Notice of withdrawal of all motions [except his speedy trial motion] and the trial date) amount to a total of fourteen days, clearly within the 120-day time period of N.C.G.S. § 15A-701. Defendant's speedy trial rights were not violated.

II

[2] Defendant next contends that, upon his oral motion to dismiss, the trial court erred in failing to find that his case had already been dismissed pursuant to N.C.G.S. § 15A-931. He argues that the district attorney took a voluntary dismissal of the case in open court on 19 November 1986 and was therefore required to reindict defendant before prosecuting him. We find no error.

After defendant had brought the matter to the trial court's attention, he called the Deputy Clerk of Forsyth County Criminal Superior Court to the stand. The clerk testified that she had been working in the courtroom on 19 November 1986 when the calendar was called and had taken minutes of the proceedings. She gave the following somewhat contradictory testimony:

A. . . . On the court minutes I have when the case was called, he stated at that time that a voluntary dismissal *was to be filed.* Later in the week—he never signed a written dismissal. And later in the week came back—the case would be continued to 12/1/86 for trial.

Q. Who told you that?

A. Either Mr. Lyle or Miss Biggs, I'm not sure. I don't have it noted down in the minutes, *but do have it wasn't voluntarily dismissed. I have written, try out.*

Q. When you got notice it was continued, that was sometime subsequent to the 19th?

A. Sometime later. But the voluntary dismissal was never filed.

Q. What did Mr. Lyle say in particular regarding that particular case?

A. The only thing he said at the time when he called the calendar that it would be a voluntary dismissal. And when I checked, I was told that the dismissal had been filed; that it was Miss Biggs' case and he should not have dismissed it at calendar call.[1]

(Emphasis added.) The trial court denied defendant's motion, stating that he understood the testimony to mean that the district attorney would file a written dismissal later in the week but that he had not done so. Defendant argues that since the clerk of court originally noted "Voluntary Dism." in her minutes, the case could not be, as he puts it, "undismissed," and the State should have reindicted him before trying him. We are not so persuaded.

On a pretrial motion, the burden is upon defendant to place competent and convincing evidence before the court in support of his motion. *See State v. Searles,* 304 N.C. 149, 282 S.E. 2d 430 (1981). The trial court was in the best position to consider and weigh the evidence defendant presented to it. The trial court determined that the evidence failed to show that the prosecutor had in fact taken a voluntary dismissal of defendant's case at the 19 November 1986 calendar call. Findings of fact made by the trial court, upon hearing evidence without a jury, are conclusive on ap-

---

1. No ambiguity would be present in this testimony had the first clause of the last sentence above read, "And when I checked, I was told that the dismissal had [*not*] been filed . . . ." We are inclined to believe that the word "not" was omitted because of a transcription error, particularly since the second clause of the sentence is couched in the negative. However, we address defendant's argument based on the record as it appears before us.

peal if supported by that evidence. *See State v. McKoy*, 303 N.C. 1, 277 S.E. 2d 515 (1981); *State v. Willard*, 292 N.C. 567, 234 S.E. 2d 587 (1977). We cannot say that the evidence, although somewhat ambiguous, fails to support the trial court's decision.

### III

[3] Defendant's next contention is that the trial court committed error by refusing to allow cross-examination of Ms. Harrison, the victim's mother, who was a material witness for the State, regarding (a) her bias, interest or motivation for testifying and (b) a specific instance of conduct to show her character for untruthfulness. Defendant first argues that he should have been allowed to cross-examine Ms. Harrison about her fear of losing custody of her children. He maintains that Ms. Harrison's testimony indicated that she testified as she did because she feared that the Protective Services officials were expecting testimony from her incriminating the defendant and that if she failed to give it they would take the children from her. Defendant contends that because of the witness' fear, her testimony falls into the category of "testimony which would clearly show bias, interest, the promise or hope of reward." *State v. Carey*, 285 N.C. 497, 508, 206 S.E. 2d 213, 221 (1974). In addition, defendant argues that the witness herself "opened the door" for his cross-examination on the subject of her interest or motivation in testifying. Defendant bases his arguments on the following questions to which the prosecutor's objections were sustained.

Q. The—you said you were afraid the—they were going to take your children away?

A. Yes, I was.

Q. Why would they want to take your children away?

MRS. BIGGS: Objection.

THE COURT: Sustained.

Q. Had you been warned in the past they were going to take your children away?

MRS. BIGGS: Objection.

THE COURT: Sustained.

Q. Did the Department of Social Services ask you to participate in this trial?

MRS. BIGGS: Objection.

THE COURT: Sustained.

Defendant insists that his case was prejudiced by his inability to cross-examine the victim's mother about her motivation for testifying. We disagree. Nothing in the record before us supports the contention that Ms. Harrison was even subtly coerced into testifying under the threat of removal of her children by the Department of Social Services. More importantly, defendant neglected to preserve the proffered evidence for the record, in that he failed to insert the witness' answers to his questions into the record. *State v. Satterfield*, 300 N.C. 621, 268 S.E. 2d 510 (1980). *See* 1 Brandis on North Carolina Evidence § 26 (1982). "When evidence is excluded, the record must sufficiently show what the purport of the evidence would have been, or the propriety of the exclusion will not be reviewed on appeal." *Id.* By failing to preserve the evidence for our review, defendant has deprived us of the necessary record from which to ascertain if the alleged error was prejudicial. *State v. Kirkley*, 308 N.C. 196, 302 S.E. 2d 144 (1983); N.C.G.S. § 8C-1, Rule 103(a)(2) (1986); N.C.G.S. § 15A-1446(a) (1983). Proper consideration of defendant's argument is therefore precluded.

[4] Defendant does not stop here however. He goes on to argue that the trial court committed reversible error by refusing to allow him to cross-examine Ms. Harrison about a specific instance of conduct to show her "character for untruthfulness." N.C.G.S. § 8C-1, Rule 608(b) (1986). During cross-examination, Ms. Harrison testified that she was paying rent on her apartment partially with governmental assistance. She stated that defendant did not pay rent, nor did he buy groceries, but that he did help to pay the light bill. Defendant then asked the witness the following questions:

Q. You get assistance from [the government] based on your income, is that what you are—

MRS. BIGGS: Objection, Your Honor.

THE COURT: Sustained.

. . . .

Q. . . . . Has he [defendant] paid child support for the boy?

MRS. BIGGS: Objection.

THE COURT: Well, sustained.

. . . .

Q. Were you reporting Mr. Miller's income to the Department of Social Services?

MRS. BIGGS: Objection.

. . . .

THE COURT: Sustained.

Defendant contends that this line of questioning would have shown that Ms. Harrison was deliberately not reporting the defendant's income to the government in order to receive more government assistance than she was entitled to. His questions, he argues, were permissible under Rule 608(b) of the North Carolina Rules of Evidence, since they would have disclosed the witness' character for lack of truthfulness. Once again, defendant failed to have the witness answer for the record. On the record before it, this Court is not in a position to determine what the witness' answers would have been and whether the omission of the evidence was prejudicial to defendant. *State v. Satterfield,* 300 N.C. 621, 268 S.E. 2d 510; 1 Brandis on North Carolina Evidence § 26 (1982).

## IV

[5]   Finally, defendant contends that the trial court erred in admitting evidence of a separate sex offense committed by him against the same victim, his son, on the day after he committed the offense for which he stood trial. On direct examination, Ms. Harrison testified as follows:

Well, he [defendant] hopped into the room. I thought he was going out again to smoke. He went in the room and got a sheet this time and laid down on the couch and put the baby in his left arm and—

MR. LEMMERMAN: Objection, Your Honor.

THE COURT: Overruled.

A. And laid down and covered up with the baby on the couch with him. And we were looking at TV, and you could see the cover going up and down. He was jacking him off.

Defendant argues that this testimony was not admissible under Rule 404(b) of the North Carolina Rules of Evidence. We disagree. Under Rule 404(b), evidence of other crimes, wrongs or acts is admissible to show motive, opportunity, intent, plan or identity. *State v. Gordon*, 316 N.C. 497, 342 S.E. 2d 509 (1986); N.C.G.S. § 8C-1, Rule 404(b) (1986). North Carolina is quite liberal in admitting evidence of other sex offenses when those offenses involve the same victim as the victim in the crime for which the defendant is on trial. *Id.; State v. Effler*, 309 N.C. 742, 309 S.E. 2d 203 (1983). The evidence that defendant had committed another sex offense against the same child, his young son, on the day after the offense for which he was being tried was admissible under Rule 404(b). Defendant further argues that Ms. Harrison did not actually see the incident and could not testify as to what occurred. Defendant's contention is not borne out by the evidence. Ms. Harrison testified that she saw defendant lie on the couch with the child, saw him cover them both up with a sheet and saw the sheet moving up and down. She in fact immediately took the child away from defendant because of what she observed. Shortly afterwards, the boy complained that defendant had hurt him. This evidence sufficiently demonstrates Ms. Harrison's personal knowledge of the incident. Defendant's argument in this regard is without merit.

We conclude that defendant had a fair trial, free of error.

No error.