EDDIE RAY CRUMP v. BOARD OF EDUCATION OF THE HICKORY ADMINISTRATIVE SCHOOL UNIT, WILLIAM PITTS, LOIS YOUNG, BARBARA A. GARLITZ, RUEBELLE A. NEWTON, C. JOHN WATTS, III, AND LARRY O. ISENHOUR

No. 8825SC401

(Filed 21 March 1989)

1. **Judgments § 37— dismissed schoolteacher—prior judicial review of dismissal hearing—bias claim not barred by res judicata**

    A dismissed schoolteacher was not estopped by reason of *res judicata* to assert his bias claim against defendant school board where plaintiff filed his bias claim against defendants at the same time he petitioned for judicial review of his dismissal hearing; defendants caused the two actions to be separated; as a consequence, the only question considered by the superior court and by the Court of Appeals was whether the hearing transcript, together with the exhibits introduced into evidence at the hearing, disclosed "substantial evidence" to support defendant board's findings against plaintiff; none of the evidence which plaintiff presented at trial to support his charge of bias existed in the record reviewed by the courts; the severance obtained by defendants forestalled plaintiff from litigating his bias claim; and defendants therefore could not successfully argue that the due process claim which plaintiff attempted to proceed with had been given preclusive effect by the judicial reviews of the dismissal hearing.

2. **Schools § 13.2— dismissal of teacher—bias in dismissal hearing charged—failure to ask board members to recuse themselves—right to raise bias charge not waived**

    Plaintiff teacher did not waive his right to raise a charge of bias on the part of defendant school board in his dismissal because he did not ask board members to recuse themselves from his dismissal hearing, since plaintiff alleged that he brought his claim of bias once he learned of the prehearing actions and statements of the board members, and defendants did not contest this assertion.

3. **Schools § 13.2— dismissal of teacher—right of due process— impartial decision maker required**

    A board of education conducting a dismissal hearing must provide the parties with all essential elements of due process,

CRUMP v. BD. OF EDUCATION

[93 N.C. App. 168 (1989)]

a fundamental requirement of which is the opportunity to be heard at a meaningful time and in a meaningful manner. To afford a meaningful hearing, due process demands that the decision maker be impartial.

**4. Schools § 4— board of education—presumption of correctness of actions**

The law affords a presumption of honesty and integrity to policymakers who possess decision-making powers, and the action of any North Carolina board of education is presumed to be correct, the burden of proof being on the complaining party to show the contrary. N.C.G.S. § 115C-44(b).

**5. Schools § 4— board of education—test for bias**

A school board's prehearing involvement with a matter which it will adjudicate, when coupled with denials at the hearing of any involvement in or familiarity with the case, is sufficient to demonstrate disqualifying personal bias.

**6. Schools § 13.2— dismissal of teacher—bias of school board— sufficiency of evidence**

Evidence was sufficient to establish a *prima facie* case of disqualifying personal bias on the part of defendant school board in plaintiff teacher's dismissal hearing where the evidence tended to show that the chairman, who said that nothing about the case had been revealed to the board until the day preceding the hearing, allegedly told another teacher at the school months earlier that the board could not "overlook" the "letters about the little girls"; another board member, who said his familiarity did not extend beyond newspaper accounts, allegedly attempted to have another teacher persuade plaintiff to resign because the charges against him "didn't look good"; that same board member told another teacher that the board seemed to have predetermined its decision to dismiss plaintiff; another board member claimed to have "not said one word anywhere" about the case, yet she allegedly told the principal that "[w]e're all together on this Crump thing"; moreover, she reportedly told plaintiff that the principal had promised the board that plaintiff would resign rather than face a dismissal hearing.

**7. Schools § 13.2— dismissal of teacher—charge of bias—court's instructions on "bias" proper**

Where plaintiff teacher claimed that he was denied due process in a dismissal hearing because of the bias of defendant board, the trial court properly instructed on the ordinary mean-

ing of the word "bias" and properly incorporated holdings from prior cases about the presumption of honesty, the legitimate investigatory functions of administrative bodies, and the nugatory effect of simple prehearing familiarity with the case. The court was not required to instruct on bias on the basis of a Kentucky case which had never been adopted in this State.

**8. Schools § 13.2— dismissal of teacher—bias of only one school board member sufficient to deprive teacher of fair hearing— instruction proper**

The trial judge correctly instructed the jury that the bias of one member of defendant school board was sufficient for the jury to find that plaintiff teacher had been deprived of a fair dismissal hearing, and a correct instruction on bias need not specify that the jury had to find that such bias infected a majority of the board members; moreover, plaintiff produced evidence from which the jury could have found that as many as four of the six board members, a majority, possessed a disqualifying bias.

**9. Schools § 13.2— teacher dismissed—charge of bias—instruction on damages proper**

In plaintiff teacher's action to recover damages for denial of due process in his dismissal hearing, the trial court properly instructed on damages, and plaintiff's evidence was sufficient to demonstrate injury where it tended to show that he experienced insomnia and depression and was unable to find employment as a teacher following his dismissal.

**10. Schools § 13.2— teacher dismissed—charge of bias—evidence tending to show character of teacher properly excluded**

In plaintiff teacher's action to recover damages for denial of due process in his dismissal hearing, the trial court properly excluded evidence concerning the charges against plaintiff as contained in a letter from the school superintendent to plaintiff since the substantiality of the charges which the superintendent brought against plaintiff, or their lack of merit, was not germane to the question of whether any of the board members brought a presettled judgment into the hearing room, and admission of the evidence would have permitted defendant to present plaintiff as an immoral person deserving of dismissal regardless of any predisposition against him by defendant board.

**11. Schools § 13.2— teacher dismissal—no standing to complain about exclusion**

A party who successfully objects to the admission of evidence about the charges leveled at a teacher's dismissal hearing cannot complain on appeal that he was precluded from introducing the same evidence.

Judge WELLS dissenting in part.

APPEAL by defendants from *Sitton (Claude S.), Judge.* Judgment entered 19 November 1987 in Superior Court, CATAWBA County. Heard in the Court of Appeals 6 December 1988.

*Ferguson, Stein, Watt, Wallas & Adkins, P.A., by John W. Gresham for plaintiff-appellee.*

*Mitchell, Blackwell, Mitchell & Smith, P.A., by Thomas G. Smith; and Sigmon, Clark & Mackie, by E. Fielding Clark, II, for defendant-appellants.*

*Tharrington, Smith & Hargrove, by George T. Rogister, Jr., for North Carolina School Boards Association, amicus curiae.*

BECTON, Judge.

On 7 June 1984, appellants, the Hickory Board of Education and its members, dismissed appellee, Eddie Ray Crump, from his position as coach and teacher at Hickory High School. Following his dismissal, Mr. Crump filed a Complaint alleging that the Board had acted with bias against him, in violation of his due process rights under the state and federal constitutions and of the statutory protections now codified at N.C. Gen. Stat. Sec. 115C-325 (1987) (Supp. 1988). Mr. Crump sought damages under 42 U.S.C. Section 1983, praying for actual damages from the Board and for punitive damages from its individual members; at trial, he abandoned his claim for punitive damages against four of the six Board members. On 19 November 1987, a jury found that the Board had failed to "provide [Mr. Crump with] . . . a fair hearing before an unbiased hearing body" and awarded him actual damages of $78,000. The jury awarded no punitive damages. The trial judge entered judgment in accord with the verdict, and from this judgment the Board appeals. We affirm.

CRUMP v. BD. OF EDUCATION

[93 N.C. App. 168 (1989)]

I

Although these parties have been before this court previously, we shall restate and elaborate upon those facts of the case that are pertinent to the issues now on appeal.

A

Eddie Ray Crump served as a coach, trainer and driver education instructor at Hickory High School. As of the 1983-84 academic term, he had been employed by the Hickory Administrative School Unit for nine years and had attained career status, entitling him to the protections of the "Tenure Act," N.C. Gen. Stat. Sec. 115C-325.

On 16 March 1984, Hickory Schools Superintendent Dr. Stuart Thompson notified Mr. Crump in a letter that he (Dr. Thompson) planned to recommend Mr. Crump's dismissal to the School Board. Dr. Thompson wrote that his recommendation would be based on four grounds: immorality, neglect of duty, failure to fulfill the duties and responsibilities of a teacher, and insubordination. Dr. Thompson submitted his dismissal recommendation on 4 June 1984, and the hearing before the Board took place two days later.

The Board received testimony from 13 witnesses, including Mr. Crump, present and former students of his, Dr. Thompson, and Hickory High School Principal Henry Williamson. The evidence presented against Mr. Crump indicated, essentially, that on several occasions between 1981 and 1984 he had improperly touched female students on their breasts, legs, and necks during driver's training classes, had asked personal questions of one of them, and had called two of them "babe" and "honey." In addition, the evidence indicated that, following a complaint by a student in 1981, Principal Williamson ordered Mr. Crump, both orally and by formal letter, to have at least two students in the training vehicle "during the road work phase of the driver education instruction of a female student." The Board found as a fact that Mr. Crump disobeyed this directive on "one or more occasions."

Mr. Crump denied any improper conduct with the students and explained his reasons for making physical contact with them during the training sessions. For example, he told the Board that at times he had "grabbed" students legs off the brake pedal to prevent the brakes from locking. Larry Wittenberg, another driver's education instructor at Hickory High School, testified that he also had found it necessary on occasion to grab students' legs during

road-work instruction. Mr. Crump contended, moreover, that his allegedly improper comments had been misconstrued by the complaining students and that he had made them merely in an effort to help his pupils relax while they drove. Mr. Crump testified that he complied with Principal Williamson's order during the 1981-82 school year but assumed after that year that the directive was no longer in effect. He presented further evidence that suggested Mr. Williamson harbored animosity against him because of his participation in an investigation of the principal by Superintendent Thompson in 1982-83.

After hearing several hours of testimony, the Board members deliberated in closed session. At approximately 3:45 on the morning of 7 June, after two hours of deliberation, the Board voted to dismiss Mr. Crump for insubordination and for immorality.

B

After his dismissal, Mr. Crump filed a Complaint in the superior court of Catawba County, alleging that the Board had denied him a fair and impartial hearing. He asked that this issue be tried before a jury. Along with the Complaint, Mr. Crump submitted a petition for judicial review of the Board's decision to terminate him. Mr. Crump charged that the Board erred in dismissing him in that the evidence on which the Board members based their findings of insubordination and immorality was insufficient to sustain those findings. In their answer, appellants moved, pursuant to Rule 42(b) of the Rules of Civil Procedure, to separate the petition for judicial review from the Complaint. The judge granted the motion and subsequently upheld the Board's decision to dismiss Mr. Crump. Mr. Crump appealed to this court, and we affirmed in *Crump v. Board of Education*, 79 N.C. App. 372, 339 S.E. 2d 483 (1986), *disc. rev. denied*, 317 N.C. 333, 346 S.E. 2d 137 (1986) ("*Crump I*").

Mr. Crump's due process claim was tried before a jury during the 16 November 1987 term of the Catawba County superior court. Mr. Crump based his charge that the Board denied him a fair and impartial hearing on a disparity between alleged prehearing involvement in the case by the Board members and their disavowals of any significant knowledge of the matter when they were asked about it at the hearing.

CRUMP v. BD. OF EDUCATION

[93 N.C. App. 168 (1989)]

At the dismissal hearing, following an opening statement by Dr. Thompson's counsel, Mr. Crump's lawyer, Mr. Fuller, questioned the Board members about their ability to be fair and impartial. The specific questions, and the Board members' answers, were as follows:

Mr. Fuller: . . . I want to be perfectly blunt about it and ask the [B]oard . . . the extent to which any of you have been personally involved, have discussed with people who have knowledge and whether any of you have formed any kind of preconceived notions. I don't mean that in a pejorative sense but just as matter of being brutally candid. Has anybody on the [B]oard either because of the publicity, because of what you have heard from [the] administration, from friends, neighbors, from anyone else, whether you have any problem at all being completely fair to Mr. Crump? And again, I don't mean fair in the sense of you will try to be fair, but can you honestly say the scales are even now . . . .

Mr. Pitts: That's a fair question. I am glad you addressed that right up front because several months ago the [B]oard was aware that some form of hearing was coming down the pike. The administration, the attorney, has not ever revealed anything until we received this letter in the mail yesterday hand delivered of any charges or any statements. Now I can speak for myself. But the attorney has asked all members of the [B]oard not to discuss any aspect of anything that they may hear. If someone calls them on the phone, they are not to respond in any way. I can speak for myself to say that for me at this point in time the slate is clear. . . .

Ms. Newton: The same thing. In fact we have not even been given a name whenever we were told a hearing was coming up. And I have not been approached by anybody. And if mention was made of it, I just said I know nothing. And whatever judgment would be made has to be done on what we hear tonight.

Mr. Isenhour: The same.

Ms. Garlitz: The same. I have had people that made statements to me, and I have not responded in any way. And I did not know until the letter came yesterday what this was about.

Mr. Watts: Frankly, I feel that I can be as objective as anybody on this [B]oard. Obviously when a newspaper that is published

CRUMP v. BD. OF EDUCATION

[93 N.C. App. 168 (1989)]

on a county-wide basis comes out and indicates that a teacher is being brought up for charges, I read the article because I'm on the [S]chool [B]oard and the teacher happens to be in my system. Other than that, there has been no preliminary information except for this notice we got yesterday afternoon late in the afternoon with the charges. I think I have a fairly good grasp of what we're here for and hopefully will be able to give every bit of the evidence full weight.

Ms. Young: I had one call, and I said, "I have no comments." And I have not said one word anywhere. And when I go, I listen and I vote my convictions.

A subsequent comment, however, suggested that all of the Board members had not been candid in their answers. During Principal Williamson's testimony Board member Isenhour asked him, "Are you aware of the fact that we had parents who will not let their daughters take driver's education because of this situation, that they're sending their daughters to the private school?" Later in the hearing, Mr. Crump's lawyer said, ". . . I would like to note that although we began with a statement of neutrality . . . it's getting right hostile. Mr. Isenhour [, you] indicated . . . that you had information about this case that nobody has discussed yet. . . . So we know we're dealing with items that are not even on the agenda." At trial, Mr. Isenhour acknowledged that there had been no testimony at the hearing concerning female students at Hickory High School taking driver's education elsewhere. He explained that "we had some complaints about a number of . . . students taking driver's education from a private school in Hickory. I tried to find out if this had some bearing on that, and I found it didn't have any bearing on Mr. Crump at all. I didn't verbalize the question very well."

Evidence Mr. Crump brought forth at trial included the following. Hal Bolick, a teacher at Hickory High School, testified that, sometime between December 1983 and January 1984, Board chairman Pitts told Mr. Bolick that the Board could not "overlook" the "letters about [Mr. Crump's conduct with] the little girls."

Mr. Bolick further testified to having had conversations with Board member John Watts prior to Mr. Crump's dismissal hearing. He testified he "advised" Mr. Watts of conversations he (Mr. Bolick) had had with Ursula Hope Bolick, his niece and one of the students who testified against Mr. Crump, about Mr. Crump. Mr. Bolick

testified that, after the hearing had ended, "[Mr. Watts] said [to Mr. Bolick] . . . that things that had gone on in the [hearing] room itself didn't seem like the [B]oard members were listening, that they seemed to have made up their minds before they went in." (Mr. Watts testified that he did not recall making such a statement to Mr. Bolick.)

Roger Henry, a former teacher at Hickory High School, testified that, sometime in March 1984, Mr. Watts had come to the high school and had asked Mr. Henry to talk with him. Mr. Henry testified that the two of them "rode around" in Mr. Watts' car and that Mr. Watts told him the charges against Mr. Crump "didn't look good, that they were concerned, and [that Mr. Watts] mentioned [Board member] Garlitz and [Chairman] Pitts and [mentioned that Mr. Crump] . . . needed to resign [and would Mr. Henry] do anything about it. . . ." (When asked at trial whether he denied that the conversation with Mr. Henry had occurred, Mr. Watts answered, "I won't deny it or confirm it, sir.")

Bruce Crump, a former teacher at Hickory High School (and no relation to Mr. Crump), testified that in the spring of 1984 he witnessed Board member Lois Young come into the office area of the high school. He testified that Ms. Young told Principal Williamson, "We're all together on this Crump thing" and that Mr. Williamson then invited Ms. Young into his office. Bruce Crump testified that no matters involving himself were pending with the Board at the time he heard Ms. Young make the statement about the "Crump thing." Neither Ms. Young nor Mr. Williamson testified at trial.

Mr. Crump testified about a conversation he had with Ms. Young after his dismissal. Mr. Crump said that Ms. Young told him Principal Williamson had at some point promised the Board that Mr. Crump would resign rather than endure a dismissal hearing and thus bring embarrassment upon his wife.

With these facts from the record as background, we turn to the issues on appeal.

II

Appellants first assign error to the trial judge's denial of their motions for summary judgment, directed verdict, and judgment notwithstanding the verdict. They contend, first, that Mr. Crump did not establish a *prima facie* case of bias against the Board

and, second, that the issue of bias was *res judicata* at the time of trial. We shall first address the *res judicata* argument.

## A

Appellants contend that the superior court and Court of Appeals' reviews of Mr. Crump's dismissal hearing foreclose him from now alleging that the Board acted out of bias. Appellants argue that the superior court judge's statement in his judgment upholding Mr. Crump's dismissal that "the action of the Board to dismiss Crump was not biased, arbitrary or capricious" and this court's affirmation of that judgment amount to a final adjudication of the bias issue. Alternatively, appellants argue that Mr. Crump waived his right to charge bias because he did not ask any Board members to recuse themselves from the hearing.

[1] Under the doctrine of *res judicata*, a valid and final judgment on a claim precludes relitigation of that claim or of any part of it. *See generally* Restatement (Second) of Judgments, Secs. 18, 19 (1982). The term *"res judicata"* typically subsumes a related doctrine, collateral estoppel, which gives conclusive effect to an issue of fact or law, actually litigated and determined by a final judgment, in any subsequent litigation between the same parties or those in privity with them. *See id.* at Sec. 27. In North Carolina, *res judicata* may be invoked against "all material and relevant matters within the scope of the pleadings, which the parties, in the exercise of reasonable diligence, could and should have brought forward [initially]. . . ." *Bruton v. Carolina Power & Light Co.,* 217 N.C. 1, 7, 6 S.E. 2d 822, 826 (1940) (citations omitted).

Given the procedural history of this case, we do not believe Mr. Crump is estopped to assert his Section 1983 claim against the Board. Mr. Crump filed his Complaint against appellants at the same time he petitioned for judicial review of his dismissal hearing. Appellants caused the two actions to be separated and, as a consequence of the severance, the only question considered by the superior court and by this court was whether the hearing transcript, together with the exhibits introduced in evidence at the hearing, disclosed "substantial evidence" to support the Board's findings against Mr. Crump. *See Crump I,* 79 N.C. App. at 373-74, 339 S.E. 2d at 484-85 (discussing "whole record test" employed by superior court and Court of Appeals in reviewing Crump's dismissal). None of the evidence Mr. Crump presented at trial to support his charge of bias existed in the record reviewed by the

courts. The severance obtained by appellants forestalled Mr. Crump from litigating his Section 1983 claim, and appellants cannot now be heard to say that the due process claim Mr. Crump attempted to proceed with has been given preclusive effect by the judicial reviews of the dismissal hearing. We hold, therefore, that Mr. Crump is not estopped by reason of *res judicata* to assert his bias claim against the Board.

[2]   Our remaining inquiry is whether Mr. Crump waived his right to raise the bias charge because he did not ask Board members to recuse themselves from the hearing. A claimant must assert promptly his claim of bias or partiality against an administrative agency after he acquires knowledge of the alleged disqualification. *See Satterfield v. Board of Education*, 530 F. 2d 567, 574-75 (4th Cir. 1975). Mr. Crump alleges he brought his Section 1983 claim once he learned of the prehearing actions and statements of the Board members. Appellants have not contested this assertion. We hold, therefore, that Mr. Crump has not waived his right to complain of bias on the part of the Board.

B

We now decide whether the trial judge erred by denying appellants' motion for judgment notwithstanding the verdict. We note that appellants also allege that the trial judge erred by denying their motions for summary judgment and directed verdict. However, we consider only the denial of the motion for judgment notwithstanding the verdict. *See Harris v. Walden*, 314 N.C. 284, 286, 333 S.E. 2d 254, 256 (1985) (denial of motion for summary judgment not reversible error when case has been determined on merits by trier of fact); *Rice v. Wood*, 82 N.C. App. 318, 322, 346 S.E. 2d 205, 208 (1986), *disc. rev. denied*, 318 N.C. 417, 349 S.E. 2d 599 (1986) (by introducing evidence, defendants waived directed verdict motion made at close of plaintiff's evidence).

[3]   A board of education conducting a dismissal hearing must provide the parties with all essential elements of due process. *Baxter v. Poe*, 42 N.C. App. 404, 409, 257 S.E. 2d 71, 74 (1979), *disc. rev. denied*, 298 N.C. 293, 259 S.E. 2d 298 (1979). Of the essential elements of due process, a fundamental requirement is that the parties have "[a] fair trial in a fair tribunal . . . ." *In re Murchison*, 349 U.S. 133, 136, 99 L.Ed. 942, 946 (1955). The Supreme Court has articulated this same idea as "the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Matthews*

*v. Eldridge*, 424 U.S. 319, 333, 47 L.Ed. 2d 18, 32 (1976) (citation omitted). To afford a meaningful hearing, due process demands that the decision maker be impartial. *Goldberg v. Kelly*, 397 U.S. 254, 271, 25 L.Ed. 2d 287, 301 (1970); *see also Bowens v. North Carolina Dept. of Human Resources*, 710 F. 2d 1015, 1020 (4th Cir. 1983); *Leiphart v. North Carolina School of the Arts*, 80 N.C. App. 339, 354, 342 S.E. 2d 914, 924 (1986), *cert. denied*, 318 N.C. 507, 349 S.E. 2d 862 (1986). Impartiality requires that the decision maker have an open mind about the factual issues to be decided. *See Corstvet v. Boger*, 757 F. 2d 223, 229 (10th Cir. 1985).

A party who bases a due process claim on the theory that the decision maker was not impartial must demonstrate that the decision-making board or individual possessed a disqualifying personal bias. *Leiphart*, 80 N.C. App. at 354, 342 S.E. 2d at 924 (citing *Salisbury v. Housing Authority*, 615 F. Supp. 1433, 1439-41 (E.D. Ky. 1985) ). To determine what constitutes impermissible bias in a case such as this one, it is necessary to remember that the concept of due process " 'negates any concept of inflexible procedures universally applicable to every imaginable situation.' " *Hortonville Joint School District v. Hortonville Education Ass'n.*, 426 U.S. 482, 494, 49 L.Ed. 2d 1, 10 (1976) (citation omitted). Rather, "[d]etermining what process is due," and, consequently, determining what actions by a decision maker will amount to disqualifying bias, "requires [a court] to take into account the individual's stake in the decision at issue as well as the State's interest in a particular procedure for making it." *Id.*

[4] Our boards of education are endowed with the "general control and supervision of all matters pertaining to the public schools in their respective administrative units and [the enforcement of] the school law in their respective units." N.C. Gen. Stat. Sec. 115C-36 (1987). The legislature has included within the purview of the boards' powers the authority to employ and to dismiss teachers. N.C. Gen. Stat. Sec. 115C-325. Being the only body so empowered, a school board has a duty to keep itself apprised of events taking place within the school system it supervises. We agree with appellants that because school boards in this State perform "dual roles as . . . administrator and enforcer," school boards cannot be expected to decide cases "in a vacuum of ignorance." Furthermore, the State has a strong interest in ensuring that capable citizens of civic spirit will look to serve on local school boards. Exposure to civil liability for acts connected with this civic function risks chilling

the desire of people to so serve. Out of considerations such as these, the law affords a presumption of honesty and integrity to policymakers who possess decision-making powers. *Hortonville*, 426 U.S. at 497, 49 L.Ed. 2d at 11-12. Additionally, the action of any North Carolina board of education is presumed to be correct, and the burden of proof is on the complaining party to show the contrary. N.C. Gen. Stat. Sec. 115C-44(b) (1987).

At the same time, the Tenure Act exists "to provide teachers of proven ability . . . [with] protecti[on] . . . from dismissal for political, personal, arbitrary, or discriminatory reasons." *Taylor v. Crisp*, 286 N.C. 488, 496, 212 S.E. 2d 381, 386 (1975). It is equally in the State's interest to attract qualified and dedicated people to the teaching profession, and this requires the state, at a minimum, to treat its teachers professionally. Additionally, our tenured teachers have an important property interest in their continued employment, *see Hortonville*, 426 U.S. at 494, 49 L.Ed. 2d at 10; *Board of Regents v. Roth*, 408 U.S. 564, 577, 33 L.Ed. 2d 548, 561 (1972) (property interests created and defined by sources such as state law), and a liberty interest in their reputations and standing within the teaching profession. *See Roth*, 408 U.S. at 573, 33 L.Ed. 2d at 558.

Prior cases that have weighed the individual's interest with the State's interest have identified certain conduct by the decision maker, which, standing alone, is not enough to constitute disqualifying personal bias. For example, a mere showing that school board members had involvement in the events giving rise to the dismissal hearing is not sufficient to rebut the presumption of the board's honesty and integrity. *Hortonville*, 426 U.S. at 496-97, 49 L.Ed. 2d at 11-12. Moreover, the fact that a decision maker enters a hearing with preliminary opinions about the matter to be adjudicated does not demonstrate that the decision maker's mind is irrevocably closed about the outcome of the hearing. *F.T.C. v. Cement Institute*, 333 U.S. 683, 701, 92 L.Ed. 1010, 1034 (1948), *reh'g denied*, 334 U.S. 839, 92 L.Ed. 1764 (1948). Our court has held, in addition, that a mere appearance of impropriety, without more, is not sufficient to demonstrate disqualifying personal bias. *Leiphart*, 80 N.C. App. at 354, 342 S.E. 2d at 924.

[5] This case, however, is not consonant with those decisions holding that a claimant did not demonstrate disqualifying bias. The case before us does not simply involve school board members who conducted a prehearing investigation, or who formulated opinions about

the matter they were to decide. The added element in this case which, disturbingly, distinguishes it from cases upholding the fairness of the decision-making process is that, here, the Board members effectively denied any connection with the case beyond their having a cursory knowledge of the nature of the charges against Mr. Crump. The issue here presented, then, is whether a school board's prehearing involvement with the matter it will adjudicate is, when coupled with denials at the hearing of any involvement in or familiarity with the case, sufficient to demonstrate disqualifying personal bias. We answer this question in the affirmative.

[6] These Board members plainly understood that Mr. Crump's lawyer requested them to state the extent of their involvement in the case, their knowledge of the nature of the charges against Mr. Crump, and their ability to be fair and impartial decision makers. Each member echoed Chairman Pitts' assertion that the "slate [was] clear." The evidence presented at trial, however, demonstrated the contrary. Chairman Pitts, who said that nothing about the case had been revealed to the Board until the day preceding the hearing, allegedly told Hal Bolick months earlier that the Board could not "overlook" the "letters about the little girls." Board member Watts, who said his familiarity with the case did not extend beyond newspaper accounts, allegedly attempted to have Roger Henry persuade Mr. Crump to resign because the charges against the latter "didn't look good." In addition, Mr. Watts reportedly told Mr. Bolick that the Board seemed to have predetermined its decision to dismiss Mr. Crump. Board member Young claimed to have "not said one word anywhere" about the case, yet she allegedly told Principal Williamson that "[w]e're all together on this Crump thing." Moreover, she reportedly told Mr. Crump that the principal had promised the Board that Mr. Crump would resign rather than face a dismissal hearing. If the disparity between the Board members' assertions about their neutrality and the evidence of their prehearing conduct is insufficient to have allowed Mr. Crump to survive motions for directed verdict and judgment notwithstanding the verdict, then it is difficult to posit any case wherein a party could prevail on a bias claim.

We do not hold that a claimant may demonstrate bias through every discrepancy between a board member's prehearing conduct and that member's statement during a *voir dire* examination at the hearing. However, we do not endeavor here to articulate when a discrepancy will rise to the level of disqualifying personal bias.

We think such a determination must be left to the courts on a case-by-case basis. We hold only that, in this case, the discrepancy between the statements of some of the board members at the hearing to be so much at odds with the evidence Mr. Crump presented at trial of their prehearing conduct that the evidence was sufficient to establish a *prima facie* case of disqualifying personal bias.

Appellants insist they candidly responded to the questions Mr. Crump's lawyer asked them at the dismissal hearing. They contend the lawyer asked only if they "could be fair" and that they responded truthfully to that inquiry. As we read the transcript of the hearing, it is clear to us that Mr. Crump's lawyer asked the Board members the extent to which they had been personally involved in the case, whether they had formulated any opinions about the case, and whether they had heard about the case. Some of the answers given by the members to these questions, particularly the answers of Mr. Watts and Ms. Young, do not square with the evidence of their conduct prior to the hearing.

In our view, Mr. Crump sufficiently rebutted the presumptions of honesty and correctness to which the Board was initially entitled. With these presumptions overcome, appellants' motion for judgment notwithstanding the verdict was properly decided by the trial judge on the basis of whether Mr. Crump "produced more than a scintilla of evidence, taking the record in the light most favorable to [him] and [giving him the benefit of] every favorable inference [from the evidence he presented]" that the Board deprived him of a fair and impartial hearing. *Mobley v. Hill*, 80 N.C. App. 79, 83, 341 S.E. 2d 46, 49 (1986). Appellants contend that Mr. Crump's evidence never rose above "the realm of speculation" that the prehearing conduct of some of the Board members meant they had decided the case against him before the hearing took place. Again, however, the relevant focus is not that the Board had prior knowledge of the case, or investigated the charges, or engaged in any conduct which, standing alone, would not amount to disqualifying personal bias. The focus here is that the Board members claimed to have had essentially no knowledge about the case when asked about it at the hearing. We agree with Mr. Crump that the jury reasonably could have inferred that these disavowals were made to mask a presettled judgment. We hold that the judge correctly denied appellants' motion for judgment notwithstanding the verdict.

### III

Appellants next contend that the judge incorrectly instructed the jury as to disqualifying personal bias and, further, that he incorrectly instructed that the bias of any one member of the Board was sufficient for the jury to find that Mr. Crump had been denied a fair dismissal hearing.

### A

[7] The trial judge defined bias as "a predetermined opinion which is fixed and not susceptible to change." The judge instructed the jury as to the presumptions of honesty and legal correctness attending the Board and its actions, he instructed that a showing the Board was merely familiar with "a fact or facts or charge or charges" stemming from the case was not a disqualifying bias, and he instructed that a school board member has a "duty to keep apprised of problem situations in the schools." The judge told the jury that "[t]o find impermissible bias [the jury had to] find by the greater weight of the evidence that the mind of a board member was predetermined and was fixed and not susceptible to change prior to the deliberating process . . . and that the decision [to dismiss Mr. Crump] was not based solely upon evidence elicited during the hearing." Appellants contend the judge's instruction failed to require the jury to balance "the traditional elements of bias" alongside the evidence of prejudgment Mr. Crump presented.

Appellants urge this court to adopt, as the standard for determining disqualifying personal bias in this State, the test articulated in *Salisbury* by the district court of the Eastern District of Kentucky. That test involves a balancing of four factors which, appellants claim, should have been used in the jury instruction here. The factors are these:

1. Whether the decision maker's role in initiating the charges was largely a procedural step, or implies that the decision maker's mind is closed on the issue of guilt.

2. Whether there are important issues of fact such that the decision maker's possible lack of impartiality gives rise to serious risk of an erroneous decision based on tainted findings of fact.

3. Whether the decision maker has a personal interest, either pecuniary or relating to personal prestige, in seeing that the termination is upheld.

4. Whether personal animosity exists between the employee and the decision maker.

615 F. Supp. at 1441. The *Salisbury* court explained in a footnote that it had not held that all four factors need be demonstrated in each case. *Id.* at n.6.

We do not quarrel with any of the factors enumerated in *Salisbury,* and, in our view, the jury in Mr. Crump's case might well have reached the same verdict based on a consideration of these factors. Any one of them, if demonstrated, would indicate that the decision maker is not capable of rendering an impartial judgment. However, just as the term "due process" is not reducible to an inflexible standard, neither can the existence of disqualifying personal bias be determined, in every case, by resort to a set of immutable factors. The *Salisbury* factors are culled from very fact-specific cases in which the courts focused on the conduct of the decision maker that gave rise to the bias charge. In all the cases, the focus of the inquiry was whether that conduct demonstrated that the decision maker harbored a presettled judgment about the matter to be decided.

To protect the due process rights of claimants, the term "disqualifying personal bias" must remain malleable enough to apply to new fact patterns that have not arisen in earlier cases. We believe this case presents a unique situation not heretofore decided upon, and thus we decline to hold that its facts must be subjected to the mechanical application of a test. We note, furthermore, that the first of the *Salisbury* factors speaks of the decision maker's "closed mind." We do not think any court would mean to limit that element of bias to only those cases in which the administrative body itself initiated the charges.

We hold, therefore, that it was not error for the trial judge to fail to instruct the jury on the basis of a Kentucky case that has never been adopted in this State. The judge's definition of bias tracked the ordinary meaning of the word. *See, e.g.,* Black's Law Dictionary 147 (5th ed. 1979). His instruction incorporated the holdings from prior cases about the presumption of honesty, the legitimate investigatory functions of administrative bodies, and the nugatory effect of simple prehearing familiarity with the case. We hold that the instruction was proper, and that it was not error for the trial judge to omit the *Salisbury* factors from that instruction.

B

[8]  Appellants contend that a correct instruction on bias would have specified that the jury had to find that such bias infected a majority of the Board members. We disagree.

Appellants concede they know of no case holding that a majority of an administrative body must possess disqualifying personal bias before impermissibly tainting the hearing. We are in accord with the view expressed by the Third Circuit in *Berkshire Employees Association v. NLRB*, wherein the Court of Appeals addressed the same argument appellants make here:

> The Board argues that at worst the evidence only shows that one member of the body making the adjudication was not in a position to judge impartially. We deem this answer insufficient. Litigants are entitled to an impartial tribunal whether it consists of one [person] or twenty and there is no way which we know of whereby the influence of one upon the others can be quantitatively measured.

121 F. 2d 235, 239 (3d Cir. 1941); *See also Cinderella Career and Finishing Schools, Inc. v. F.T.C.*, 425 F. 2d 583, 590-92 (D.C. Cir. 1970); *American Cynamid Co. v. F.T.C.*, 363 F. 2d 757, 767 (6th Cir. 1966). We hold, therefore, that the judge correctly instructed the jury that the bias of one member of the Board was sufficient for the jury to find that Mr. Crump had been deprived of a fair hearing. Moreover, Mr. Crump produced evidence from which the jury could have found that as many as four of the six Board members (a majority) possessed a disqualifying bias.

Though appellants have not raised the issue on appeal, we point out that the trial judge's instruction did not permit the jury to hold the Board members individually liable on the basis of any one member's bias. The judge gave a separate instruction on punitive damages in which he made plain that punitive damages could "only be awarded against an individual defendant" on the basis of that defendant's conduct. The judge's instruction, therefore, while permitting the jury to hold the Board liable in actual damages on the basis of one member's bias, did not allow the bias of one member to be the ground for holding any other member individually liable. The judge instructed the jury that it could consider punitive damages only against Board members Young and Watts, "not against the Board of Education or any other [Board member]." The jury, ultimately, awarded no punitive damages against Ms. Young and Mr. Watts.

IV

[9] Appellants contend that the trial judge erred by not setting aside the damages awarded Mr. Crump by the jury. On the damages question, the judge instructed the jury that it could not award Mr. Crump compensatory damages for lost wages. His instruction on compensatory damages also included the following:

> The plaintiff has the burden of proving by the greater weight of the evidence that he has suffered embarrassment, humiliation, loss of professional reputation or mental anguish as a proximate result of the defendants' denial of his rights. Compensatory damages are not to be denied simply because they may not be easily [quantified]. The plaintiff must prove, however, the existence and magnitude, if any, of such injuries and damages by its greater weight.

Mental and emotional distress caused by a denial of procedural due process is compensable under Section 1983. *Carey v. Piphus*, 435 U.S. 247, 264, 55 L.Ed. 2d 252, 265 (1978). In *Carey*, the United States Supreme Court held that a plaintiff must prove injury to be entitled to compensatory damages under that statute; damages are not presumed. *Id.* The trial judge, therefore, correctly instructed the jury that Mr. Crump bore the burden of proving he had suffered injury.

At trial, Mr. Crump testified to experiencing insomnia, sleeping only "two or three hours a night." He further testified to having been unable to find employment as a teacher since his dismissal from Hickory High School. Marsha Crump, Mr. Crump's wife, testified that, following the hearing, Mr. Crump "was very depressed," that he "[had a feeling] of hopelessness" and that he "tossed and turned in bed a lot." In *Carey*, the Supreme Court said that "[although mental distress injuries are] essentially subjective, genuine injury . . . may be evidenced by one's conduct and observed by others." *Id.* at 264, 55 L.Ed. 2d at 265, n.20. We hold that Mr. Crump's evidence was sufficient to demonstrate injury.

Because we have determined that the judge correctly instructed the jury as to damages and that Mr. Crump's evidence was sufficient to demonstrate injury, our review of the judge's refusal to set aside the damages award is confined to the question of whether the judge abused his discretion. *See Thompson v. Kyles*, 48 N.C. App. 422, 426, 269 S.E. 2d 231, 234 (1980), *disc. rev. denied*, 301

N.C. 239, 283 S.E. 2d 135 (1980); *Klein v. Sears & Roebuck Co.*, 773 F. 2d 1421, 1428 (4th Cir. 1985). From our review of the evidence in this case, we cannot say that it was an abuse of discretion for the trial judge, intimately familiar with the facts of this case, to refuse to disturb the jury's award of damages. *See Klein*, 773 F. 2d at 1428. Thus, we overrule this assignment of error.

V

Appellants next assign error to the trial judge's exclusion of evidence related to the Board's deliberations at the dismissal hearing. Specifically, they complain that the judge did not allow them to put in evidence: 1) the letter from Dr. Thompson to Mr. Crump in which the former announced his intention to seek Mr. Crump's dismissal and detailed the charges against him; 2) testimony about the Board's deliberations; 3) testimony about which portions of the evidence against Mr. Crump allegedly convinced Board members to vote for his dismissal; 4) portions of the Board's findings of fact, conclusions of law, and order; and 5) those portions of this court's opinion in *Crump I* reciting the factual history of the case. Appellants allege that the exclusion of this evidence prevented the jury from determining if the alleged bias of the Board proximately caused it to dismiss Mr. Crump. They contend that the evidence would have demonstrated to the jury that Mr. Crump would have been terminated as a career teacher by any group of people called upon to decide the case.

We note that appellants made no offer of proof of the evidence they allege convinced them to vote for Mr. Crump's dismissal. On this ground alone we may hold that defendants may not now claim error. *See* N.C. Gen. Stat. Sec. 8C-1, R. Evid. 103(a)(2) (1988). Notwithstanding appellants' failure to make an offer of proof, the transcript of the dismissal hearing enables us to review whether prejudicial error resulted from the exclusion of that evidence. *Cf. State v. Miller*, 321 N.C. 445, 452, 364 S.E. 2d 387, 391 (1988) (by failing to preserve evidence for appellate review, defendant deprived Supreme Court of necessary record from which to ascertain if alleged error was prejudicial). Therefore, we will consider all the evidence appellants contend should have been admitted by the trial judge.

[10] The judge properly prevented appellants from introducing the evidence touching upon the details of the charges against Mr. Crump. Such evidence was irrelevant, was unduly prejudicial, and

risked confusing the jury about the material issues in the case. N.C. Gen. Stat. Sec. 8C-1, R. Evid. 401, R. Evid. 403 (1988). Mr. Crump alleged he did not receive a fair and impartial hearing from the Board. The substantiality of the charges Superintendent Thompson brought against him, or their lack of merit, was not germane to the question of whether any of the Board members brought a presettled judgment into the hearing room. At trial, the Board members had every opportunity to answer Mr. Crump's allegations about their prehearing statements and conduct. The judge also allowed them to explain the answers they gave at the hearing about their lack of knowledge and participation in the case. Finally, he allowed them to testify that they had not acted out of bias against Mr. Crump. This line of inquiry kept the jury's focus on the relevant issue of impartiality.

Assuming Mr. Crump was indeed guilty of every allegation brought against him, due process still entitled him to an impartial decision maker. Even the most culpable defendant has a right to an unbiased jury. Admission of the evidence the Board sought to introduce would have permitted appellants to present Mr. Crump as an immoral person deserving of dismissal regardless of any predisposition against him by the Board. Such evidence would have improperly confused the issues before the jury.

We hold, therefore, that the trial judge correctly disallowed the jury from receiving this evidence.

Mr. Crump attempted, in his case-in-chief, to offer his own evidence concerning the charges that led to his dismissal. Significantly, and as an alternative basis of our holding, counsel for appellants objected that Mr. Crump was attempting to "retry[ ] the case that was tried before the [B]oard, and [that the case against Mr. Crump was] not the issue." The judge consistently prevented either side from addressing the allegations that had been heard by the Board.

[11] Even assuming the judge erred by excluding appellants' evidence, we conclude that appellants are estopped to complain on appeal. We analogize to the doctrine of invited error and to the "opening the door" metaphor, whereby a party may not assert error based on a course he himself pursued at trial. *See, e.g., Johnson v. Massengill*, 280 N.C. 376, 383, 186 S.E. 2d 168, 174 (1972) (party who, on cross-examination, opened door to damaging testimony cannot win new trial based on admission of testimony); *All American Life and Casualty Co. v. Oceanic Trade Alliance*

*Council International, Inc.,* 756 F. 2d 474, 479-80 (6th Cir. 1985), *cert. denied,* 474 U.S. 819, 88 L.Ed. 2d 55 (1985) (under invited error doctrine, when injection of allegedly inadmissible evidence is attributable to action of party seeking to exclude evidence, admission is not reversible error). If the reasoning in such cases is correct, it must likewise be the case that a party who successfully objects to the admission of evidence about the charges leveled at a dismissal hearing cannot complain on appeal that he was precluded from introducing the same evidence.

We overrule this assignment of error.

## VI

Appellants next object to the trial judge's ordering that the testimony of Douglas Punger be sealed. Mr. Punger sat as lawyer for the School Board during Mr. Crump's hearing and observed the Board's deliberations. At trial, the judge told defense counsel, when they sought to introduce Mr. Punger's testimony, that because all other evidence of the Board's deliberations had been excluded, Mr. Punger's evidence was to be reduced to writing and sealed for appellate purposes. One of the defense lawyers responded, "Fine. One copy left with the court."

Alleged errors based on rulings made during the trial must be called to the attention of the trial judge by an objection taken at the time the rulings are made. *See* N.C. R. Evid. 103(a)(1). Because appellants did not object to the judge's ruling on Mr. Punger's testimony, we overrule this assignment of error.

## VII

Appellants' last assignment of error is to the trial judge's admission of testimony concerning Principal Williamson's alleged animosity toward Mr. Crump. Appellants argue this evidence was irrelevant. We disagree.

Mr. Crump's theory of his case was that Mr. Williamson used the charges as a pretext to dismiss him because of his cooperation in an investigation of Mr. Williamson by Superintendent Thompson. Mr. Crump's theory alleged that Mr. Williamson, through *ex parte* meetings, convinced some members of the Board to terminate Mr. Crump. His evidence about Mr. Williamson, therefore, was relevant to explain the reasons for the Board's alleged bias.

We overrule this assignment of error.

## VIII

We find no error in the trial of this case. Therefore, the judgment is

Affirmed.

Judge JOHNSON concurs.

Judge WELLS dissents in part.

Judge WELLS dissenting in part.

One aspect of the majority opinion disturbs me. In the context of the Sec. 1983 claim for monetary damages, based on denial of due process, the trial court charged the jury that the bias of *one* member of the Board was sufficient to establish that plaintiff had been denied due process. The majority opinion approves that instruction, and in doing so expresses its accord with the view expressed by the Third Circuit Court of Appeals in *Berkshire Employees Association v. NLRB* as follows:

> 'The Board argues that at worst the evidence only shows that one member of the body making the adjudication was not in a position to judge impartially. We deem this answer insufficient. Litigants are entitled to an impartial tribunal whether it consists of one [person] or twenty and there is no way which we know of whereby the influence of one upon the others can be quantitatively measured.'

The Third Circuit Court in that case remanded the matter for a determination of whether a member of the Board was disqualified because of bias, and, if so, to grant plaintiff a new hearing by Board members not so disqualified.

I regard the implication of that case as vastly different from the case now before us, where the result of the trial court's instruction allowed the jury to hold the entire Board answerable in damages because of the bias of a single member. In a due process context, this result appears to be somewhat incongruous, if not bizarre.

I agree with defendant that a correct instruction on bias would specify that the jury had to find that such (impermissible) bias infected a majority of the Board members. I disagree with the statement of the Third Circuit Court that "there is no way which

. . . the influence of one upon the others can be quantitatively measured. . . ." I know no reason why a jury could not as satisfactorily sort out this kind of evidentiary challenge as well as they are regularly called upon to do in complex or difficult cases.

I perceive that the balancing process at stake here is fraught with difficulty: the entitlement of plaintiff to a fair hearing on his discharge versus the entitlement of defendant to a fair trial in this case. It appears unfair to me to hold the whole Board responsible in damages for the bias of a sole member. I therefore respectfully dissent on this issue, and I vote to award defendant a new trial.